UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JARRID J. WHITLEY, on behalf of
himself, and others similarly situated,

Plaintiff,

v.

SIEMENS INDUSTRY, INC., also
doing business as and referred to as
SIEMENS USA, SIEMENS
CORPORATION, and SIEMENS, and
DOES 1-100, inclusive,

Defendants.

No.  2:14-cv-00099-MCE-DAD

**MEMORANDUM AND ORDER**

    This is a putative class action in which Plaintiff Jarrid Whitley ("Plaintiff") makes

wage and hour claims against his former employer, Defendant Siemens Industry, Inc.

("Siemens").  Siemens now moves to enforce the terms of a settlement agreement it

reached with Plaintiff following a lengthy mediation and subsequent negotiations.  That

settlement resulted in a written Memorandum of Understand ("MOU") prepared by

Plaintiff's counsel and signed by all parties.  Plaintiff later attempted to withdraw his

consent to settling the case, and Plaintiff alleges the MOU was not intended by the

parties to constitute a binding settlement.  As set forth below, Siemens' Motion to

Enforce Settlement Agreement is GRANTED.

**BACKGROUND**

On January 15, 2014, Plaintiff filed the instant putative class action, which included the following claims asserted against Siemens:  1) failure to provide meal and rest periods in accordance with California Labor Code §§ 226.5 and 512; 2) failure to furnish accurate wage statement in violation of California Labor Code § 226; 3) conversion; and 4) unfair business practices in contravention of California Business and Professions Code § 17200, et seq.

In the interests of timely resolution and conservation of resources on the part of all involved, the Parties decided to engage in early mediation with a voluntary exchange of documents and information.  Decl. of Gregory Iskander, ¶ 2.   Michael Dickstein, an experienced mediator with extensive experience in employment cases, and in particular wage and hour class actions, was selected to mediate.  Id.

On May 6, 2014, the parties attended a voluntary mediation with Mr. Dickstein in San Francisco.  Both Plaintiff and his counsel, Anthony Perez, Jr., were present at the resulting mediation, which lasted about twelve hours.  Id. at ¶ 5.  Although no final resolution was reached at that session, the parties made substantial progress and agreed to continue to discuss settlement through Mr. Dickstein .  Id.  Following these negotiations, a settlement covering all claims made in the action was reached. Mr. Perez proceeded to memorialize the terms of the settlement in a MOU.  On June 30, 2014, both Plaintiff and Mr. Perez signed the MOU, which provides in pertinent part as follows:

> As a result of mediation of claims with Michael Dickstein, Mediator, Jarrid Whitley and Siemens Industry, Inc. ("Siemens") **reached agreement to settle [this] lawsuit** . . . subject to the court's approval, with the following general terms, which will be specified with more particularity in a fully documented Settlement Agreement.  **This Memorandum of Understanding is intended by the Parties to be a binding agreement.**

MOU, Ex. A to Iskander Decl., ¶ 1 (emphasis added).

1   Substantively, the MOU proceeds to define the class for purposes of settlement and

2   details the settlement fund the class is to receive as well as the disbursement method

3   applicable to those proceeds.  Id. at ¶¶ 2-5.  Additionally, the MOU also sets forth the

4   maximum amount of attorney's fees Plaintiff's counsel may collect and what will happen

5   if more than ten percent of the class opt out of the settlement.  Id. at ¶¶ 3, 6.  With regard

6   to Plaintiff Whitley individually, the MOU provides the incentive payment he will receive

7   as the cash representative, as well as an additional settlement payment of $25,000.00

8   for his personal claims.  Id. at ¶¶ 5.  In exchange, Whitley agreed to provide a general

9   release of all claims with a waiver under California Civil Code § 1542, and further agreed

10   not to reapply for employment with Siemens and to keep the terms of his settlement

11   confidential.  Id. at ¶¶ 7, 10.

12       Following execution of the MOU, counsel for Siemens agreed to draft a Formal

13   Stipulation of Class Action Settlement to file with this Court, as contemplated by the

14   MOU.  Iskander Decl., at ¶ 7.  Plaintiff's counsel agreed that the Stipulation was

15   acceptable and accurately reflected the terms of the MOU (Id. at ¶ 7).  Consistent with

16   that representation, Plaintiff's counsel filed a Notice of Settlement with this Court on

17   July 3, 2014.  ECF No. 15.

18       Plaintiff subsequently refused to sign either the Stipulation of Class Action

19   Settlement or the corresponding Settlement Agreement as to his personal claims.  This

20   motion to enforce settlement followed.

21

22                                    **STANDARD**

23

24       "A settlement agreement is a contract, and the legal principles which apply to

25   contracts generally apply to settlement contracts."  Weddington Productions, Inc. v. Flick,

26   60 Cal. App. 4th 793, 810 (1998).  "The construction and enforcement of settlements

27   agreements are generated by principles of local law which apply to interpretation of

28   contracts generally."  United Commercial Ins. Service v. Paymaster Corp., 962 F.2d 853,

1  856 (9th Cir. 1992), quoting Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1989).

2  Consequently, in determining whether to enforce the settlement allegedly reached by the

3  parties herein, the Court must apply California law.

4      California has a strong policy in favor of enforcing settlement agreements.  Osumi

5  v. Sutton, 151 Cal. App. 4th 1355, 1357 (2007).  To that end, the inherent authority of

6  district courts to enforce valid settlement agreements in pending actions has long been

7  recognized.  See MetroNet Servs. Corp. v. U.S. West Comms., 329 F.3d 986, 1013-14

8  (9th Cir. 2003) (cert. granted and judgment vacated on other grounds by Quest Corp. v.

9  MetroNet Servs. Corp. 540 U.S. 1147 (2004); see also In re City Equities Anaheim, Ltd.,

10  22 F.3d 954, 957 (9th Cir. 1994); TNT Marketing Inc., v. Agresti, 796 F. 2d 276, 278

11  (9th Cir. 1986).  The Court's discretion in enforcing settlement agreements remains

12  broad even where a party claims he or she did not understand of terms of the

13  agreement.  See Hedging Concepts, Inc. v. First Alliance Mortgage Co., 41 Cal. App. 4th

14  1410, 1421 (1996) ("In the interest of preserving some reasonable stability in commercial

15  transactions, the courts will not set aside contractual obligations, particularly when they

16  are embodied in written contracts, merely because one of the parties claims to have

17  been ignorant of, or to have misunderstood, the provisions of the contract").

19  **ANALYSIS**

21      A settlement agreement must meet two general requirements in order to be

22  enforceable.  First, it must be a complete agreement.  Maynard v. City of San Jose,

23  37 F.3d 1396, 1401 (9th Cir. 1994).  Second, the parties must have either agreed to the

24  terms of the agreement or authorized their respective counsel to effectuate settlement.

25  Harrop v. Western Airlines, Inc., 550 F.2d 1143, 1144-45 (9th Cir. 1977).  As long as a

26  "meeting of the minds" has been reached as to the essential terms of the settlement, it is

27  enforceable, even should a party later refuse to sign.  See Dillard v. Starcon Int'l,

28  ///

1  Inc., 483 F.2d 502 (7th Cir. 2007) (enforcing oral settlement reached in principal where

2  parties disagreed over terms to be included in final settlement agreement).

3      Turning first to the requirement that the settlement must constitute a complete

4  agreement, general contract principles provide that a proposal for compromise can be

5  accepted, and accordingly form a complete agreement, if its terms are reasonably

6  certain.  See Weddington Productions, Inc., 60 Cal. App. 4th at 811.  In order to be

7  binding, a settlement need only be sufficiently definite to enable a court to give it

8  meaning.  Id.  Consequently, the fact that a more formal agreement may be

9  contemplated does not alter the validity of an agreement whose terms meet the requisite

10  definiteness.  Blix Street Records, Inc. v. Cassidy, 191 Cal. App. 4th 39, 48-49 (2010)

11  To that end, California law permits parties to bind themselves to a contract even if they

12  anticipate that certain aspects of the deal be reduced to a further writing thereafter.

13  Facebook, Inc. v. Pac, Nw. Software, Inc., 640 F.3d 1034, 1038 (9th Cir. 2011).

14      The facts encountered by the Ninth Circuit in Facebook are particularly instructive

15  here.  There, after a day of negotiations, the parties signed a handwritten "Settlement

16  Agreement" which specified that the deal reached was both binding and subject to

17  enforcement.  When the settlement fell apart during negotiations over the form of the

18  final agreement, Facebook filed a motion to enforce.  One of the parties argued that the

19  Settlement Agreement was unenforceable, both because it lacked material terms and

20  had been procured through fraud.  The district court enforced the settlement and that

21  decision was upheld on appeal.  As the Ninth Circuit noted, as long as the terms a

22  settlement agreement are sufficiently definite for a court to determine the parameters of

23  the agreement, to determine whether a breach has occurred and to order remedies as a

24  result of that breach, the agreement is binding, even if the parties "understood that some

25  material aspects of the deal would be papered later."  Id. at 1038.

26      In the instant matter, as in Facebook, the parties reached an agreement that was

27  sufficiently definite to enable a court to give it meaning and contained the essential terms

28  of their settlement, which they intended to be binding, even if some "form and

5

1   documentation" were to be determined later.  Id.  Indeed, the partial opposition filed by

2   Plaintiff's counsel, Anthony M. Perez, does not contest that a valid settlement was

3   reached as to the class allegations.  Perez only takes issue with whether Plaintiff is

4   bound to release his individual claims in addition to those he pursued on behalf of the

5   class.  Although Perez himself prepared the MOU, and while the MOU provides that

6   Plaintiff will release his individuals claims in exchange for a settlement payment of

7   $25,000.00[1], Perez takes the position that Plaintiff could not have waived his claims

8   under California Civil Code § 1542 because the Settlement Agreement stated only that

9   Plaintiff was to provide a general release and to waive his rights under § 1542.  Perez

10  argues that because the Settlement Agreement did not specifically spell out what a

11  § 1542 waiver entailed, that portion of the Agreement was not subject to enforcement

12  and should be severed from the valid remainder of the Settlement Agreement.

13       The Court finds this contention unpersuasive.  First, the Settlement Agreement

14  provides in two separate places, in paragraphs 7 and 10, that Plaintiff will provide a

15  "general release of all claims" and a "Civil Code § 1542 waiver."  Importantly, it was

16  Plaintiff's counsel himself who drafted the MOU, and Plaintiff was represented at all

17  times during the lengthy settlement negotiations that preceded the agreement.  This in

18  and of itself is persuasive evidence that Whitley understood his rights as well as the

19  impact of releasing his claims.  See Israel-Curley v. Cal. Fair Plan, 126 Cal. App. 4th

20  123, 129 (2005) ("If plaintiff had any question about the scope of the [ § 1542] release

21  [he] was signing, despite its clear language, [he] had counsel to advise [him] on the

22  matter").  In addition, as stated above, the release being made by Plaintiff is

23  unequivocally described as a "general release of all claims."  This also put Plaintiff on

24  notice of the fact that he was relinquishing all his rights against Defendant.  Significantly,

25  too, under California law, a § 1542 release need not even specifically recite its terms to

26  be binding, as long as the evidence indicates that the parties consciously intended to

27  release all claims.  See Casey v. Proctor, 59 Cal.2d 97, 110 (1963).  Here, aside from

28       [1] See MOU, Ex. A to Iskander Decl., ¶ 10.

1  the terms of the Settlement Agreement itself, the fact that Plaintiff was represented at all

2  times by counsel, squarely militate in favor of such a conclusion.

3      The cases Plaintiff's counsel cites in suggesting a contrary conclusion are

4  unavailing.  In Kaiser v. Trace, Inc., 2014 WL 1745419 (D. Idaho 2014), for example,

5  unlike the present matter, the parties had yet to agree on the exact nature of the release

6  and had only memorialized their agreement in an email.  Similarly, in Inamed Corp. v.

7  Kuzmak, 275 F. Supp. 2d 1100 1127-30 (2002), where the terms of the settlement were

8  discussed only in letters between counsel, with no settlement agreement of any kind

9  formalized, reference to a general release in counsel's letters could not be enforced.

10  Here, on the other hand, a general release was specified in a document specifically

11  denominated as a settlement agreement, containing all essential terms of the parties'

12  agreement, and signed by both Plaintiff and his counsel.

13      Finally, the Court notes that a second attorney for Plaintiff, David Yeremian, filed

14  an additional opposition to the instant motion on February 9, 2015, nearly three months

15  after this Motion was submitted on November 10, 2014, in advance of the November 13,

16  2014 hearing date.  Defendant has objected to that Opposition as untimely, and the

17  Court agrees.  The record shows that Yeremian filed a second lawsuit on Plaintiff's

18  behalf in state court on October 20, 2014 (Whitley v. Siemens, Case No. 2:15-cv-00303-

19  MCE-DAD, ECF No. 1).  This was before any opposition to the instant motion would

20  have been due, under Eastern District Local Rule 230(c), fourteen (14) days prior to the

21  November 13, 2014 motion hearing date.  Under those circumstances, notice must be

22  imputed to Yeremian of his client's prior lawsuit, and the long overdue arguments voiced

23  by Yeremian in his tardy opposition will not be considered.

24  ///

25  ///

26  ///

27  ///

28  ///

1    **CONCLUSION**

2

3       Given the foregoing, Defendant's Motion to Enforce Settlement (ECF No. 16) is

4    GRANTED, in its entirety.[2]  Given the fact that Plaintiff entered into a binding settlement

5    as to both his class-based and individual claims, the Court declines Plaintiff's suggestion

6    that his individual claims be severed and permitted to proceed.  Finally, Plaintiff's second

7    Opposition (ECF No. 23) is STRICKEN as untimely.

8       IT IS SO ORDERED

9    Dated:  June 1, 2015

10

11

12                                     _____

                                     MORRISON C. ENGLAND, JR., CHIEF JUDGE
13                                     UNITED STATES DISTRICT COURT

14

15

16

17

18

19

20

21

22

23

24

25

26

27    _____

28       [2] Because oral argument was not deemed to be of material assistance, this motion was submitted
    on the briefing.  E.D. Local Rule 230(g).

8