1

**PEREZ LAW OFFICES**
Anthony M. Perez, Jr. (SBN 113041)

2
455 Capitol Mall, Suite 225
Sacramento CA 95814

3
Telephone: (916) 441-0500
Facsimile: (916) 441-0555

4
email: aperez@perezlawoffices.com

5

Attorney for Plaintiff

6
JARRID WHITLEY, on behalf of himself
and others similarly situated

7

8

9

10

11

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

12

**JARRID WHITLEY,**
on behalf of all others similarly situated,

13

14
                                    Plaintiff,

15
v.

16
**SIEMENS INDUSTRY, INC., also doing**
**business as and referred to as SIEMENS**

17
**USA, SIEMENS CORPORATION, and**
**SIEMENS, and DOES 1-100, inclusive,**

18

19
                                    Defendants. /

Case No.: 2:14-CV-0099 MCE-DAD

**PLAINTIFF'S MOTION FOR FINAL**
**APPROVAL OF CLASS ACTION**
**SETTLEMENT; AWARD OF**
**ATTORNEY'S FEES & COSTS &**
**CLASS REPRESENTATIVE**
**INCENTIVE PAYMENT**

Date:    October 1, 2015
Time:    2:00 p.m.
Judge:   Hon. Morrison C. England, Jr.
Courtroom: 7

20

21

**I. INTRODUCTION**

22
        This memorandum is submitted in support of Plaintiffs' Motion for Final Approval of

23
Class Action Settlement, Request for Award of Attorney's Fees and Costs, and Class

24
Representative Incentive Payment and Class Administration Payment. The settlement before this

25
Court will dispose of the action as to Defendant Siemens Industry, Inc., also doing business as

26

27
PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AWARD OF ATTORNEY'S FEES
& COSTS & CLASS REPRESENTATIVE INCENTIVE PAYMENT

1

28

and referred to as Siemens USA, Siemens Corporation, and Siemens (hereinafter collectively referred to as, "Siemens" or "Defendant").

The Settlement Agreement and Stipulation of Settlement provides for a common fund settlement of $990,000.00 with **no reversion** to the Defendant. As discussed below, the response to the Proposal Settlement has been overwhelmingly positive. Out of 517 potential Class Members**, none have submitted requests to opt-out, and there has not been a single objection to the Proposed Settlement**. Claim form submissions amounted to 70% of the Class, which is exceptional.(Dec. of T. Cunningham ) There were no "opt-outs" and no objections to the Settlement.

Class Counsel has achieved an excellent result in this litigation, embodied in the Settlement Agreement and Stipulation of Settlement which provides substantial benefits to the to the Class and is the product of aggressive and lengthy litigation of Class Counsel to obtain the best possible result for the Class Members. The settlement of this action is fair, reasonable, and adequate and in the best interests of the Class.  Accordingly, Final Approval should be granted. Furthermore, Class Counsel requests attorney's fees and costs, and the Class Representative's proposed incentive award are reasonable and appropriate in light of the value that has been bestowed upon the Putative Class.

Defendant, Siemens does not oppose with Plaintiffs' Motion for Final Approval. Class Counsel has conferred with Defendants' Counsel, at Littler Mendalson who is in agreement with the Motion for Final Approval. We respectfully request that the Court grant this Motion for Final Approval.

**Nature of Class Action**

This is a class action brought by Plaintiffs Jarrid J. Whitley, (hereinafter referred  to as "Whitley" or "Plaintiff") on behalf of himself and others similarly situated, whom have sustained injuries or damages arising out of the conduct of Defendants, Siemens Industry, Inc., (hereinafter

referred to collectively as Siemens) in violating the wage and hour laws of the State of California by failing to provide their non-exempt employees with meal and rest periods as required by the Orders of the California Industrial Welfare Commission and California Labor Code § 226.7.[1]

The Class Action Complaint specifically asserts causes of action for: Failure To Provide Meal And Rest Periods As Required By Wage Orders Of The Industrial Welfare Commission, California Labor Code § 226.7 and § 512, *inter alia;* Failure To Furnish Accurate And Timely Wage and Hour Statements (California Labor Code § 226); Conversion; and Unfair Business Practices in Violation of California Business and Professions Code §17200, et seq.

California law requires that employers provide employees with at least one 30-minute off duty meal period if the employee works at least five hours in the day, although the employee can waive that meal period if the shift lasts no more than six hours. If the employee works at least 10 hours in a day, a second meal period must be provided, although the second meal period can also be waived under certain circumstances. If the requisite meal periods are not provided to non-exempt employees, the employer must pay the employee not only for the time worked, but also an additional one hour of "premium pay". Regarding rest breaks, California law states simply that employers must "authorize and permit" employees to take a 10-minute rest break for each four hour period of work or "major fraction thereof". If a rest period is not permitted, non-exempt employees are entitled to one additional hour of premium pay.

Plaintiff alleges that SIEMENS required its nonexempt employees, including but not limited to, welders, assemblymen, painters, blasters, transportation crew members, sub-assembly crew members, to work some shifts of ten (10) hours or greater without providing non-exempt employees a second meal break and rest period under the law. During this time, Plaintiff alleges that SIEMENS did not have a policy concerning second meal breaks and rest periods for extended daily work schedules. Non-exempt employees did not receive second meal breaks and arguably subsequent rest periods.

---

[1] The Class size is 517, all located at the Sacramento Siemens Plant Facility.

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AWARD OF ATTORNEY'S FEES & COSTS & CLASS REPRESENTATIVE INCENTIVE PAYMENT

3

**Settlement Negotiations**

After this action was filed, the parties agreed to conduct an early mediation using Michael Dickstein, an extremely experienced mediator familiar with issues raised in this action. Prior to mediation, Siemens produced data including employee shift data, employee id and compensation rate data, and other data relative to the claimed meal and rest break violations for the appropriate class period. That material was forwarded to Plaintiffs' expert for expert review. The data was analyzed and ultimately settlement was conditioned on the data being verified under penalty of perjury. Ultimately the data utilized was verified by Siemens under penalty of perjury.

On May 6, 2014, the parties attended a voluntary mediation session in San Francisco which lasted approximately 12 hours. Armed with sufficient information the mediation involved extensive, arms-length negotiations. (Id.) Numerous offers were exchanged before settlement terms were achieved. Settlement at that time was not reached. The parties continued negotiations in the following weeks which ultimately resulted in a Mediator's Proposal presented by mediator Dickstein.   The parties accepted the Mediator's Proposal on May 22, 2014. Following the Mediator's Proposal acceptance, a Memorandum of Understanding (MOU) was prepared and fully executed by the parties outlining class settlement terms on July 2, 2014. The Court ordered Enforcement of the Settlement Terms on June 1, 2015.

Based on Plaintiff's Counsel's evaluation of the case and the input from retained experts the settlement reached by the parties is fair and equitable. As in any wage and hour class action, Plaintiff faced hurdles of obtaining class certification, losing on the merits and appeals.

**Methodology of Class Fund Distribution**

The Claims Administrator will divide the Net Settlement Amount by the total number of Eligible Shifts worked by all Class Members who timely submitted a claim form during the Class Period. This will yield the initial dollar value per Eligible Shift. A Class Member's initial

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AWARD OF ATTORNEY'S FEES & COSTS & CLASS REPRESENTATIVE INCENTIVE PAYMENT

4

individual Claim Amount will be determined by multiplying the dollar value per Eligible Shift (as calculated by the Claims Administrator) by the total number of Eligible Shifts worked by the individual Claimant. All settlement payments are subject to tax. This particular claim was highly disputed.

In addition each Class member, whether they submitted a claim form or not, will receive $500.00 in connection with disputed claims, for missed rest breaks when working a shift exceeding 10 hours or more. There is no data, electronic or otherwise, that indicates missed meal breaks, only anecdotal evidence. Settlement was based on approximately 550 eligible Class Members, which was high and provided somewhat of a windfall to class members. Since this is a non-reversionary settlement, the parties stipulated to the minimum payment to Class Members, who may not have eligible meal shift violations, but are covered by the release of claims.

## II.  FINAL SETTLEMENT APPROVAL IS APPROPRIATE

Pursuant to both State and Federal rules of Civil Procedure, "a class action shall not be dismissed or compromised without the approval of the Court, and notice of the proposed dismissal or compromise shall be given to all members of the Class in such manner as the Court directs..." C.C.P. §1781(f); Fed. R. Civ. P. 23(e). In deciding whether to grant final approval to a proposed Class Action Settlement, the Court's overriding concern is whether the proposed settlement is "fair, adequate, and reasonable." (*Dunk v. Ford Motor Company*, (1996) 48 Cal.App.4th 1794, 1801, *quoting Officers for Justice v. Civil Service Com.*, (9th Cir. 1982) 688 F.2d 615, 625, cert. Denied (1983) 459 U.S. 1217.)

In practical terms, the settlement of this class action follows three parts: (1) Order Enforcement of Settlement; (2) Notice to Class Members[2], and (3) Final Approval hearing or "Fairness Hearing" at which evidence and argument may be heard on the fairness, adequacy and

---

[2] See Declaration of Tim Cunningham outlining Notice Procedures and the Notice Packet submitted to the Court and approved by the Court for distribution.

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AWARD OF ATTORNEY'S FEES & COSTS & CLASS REPRESENTATIVE INCENTIVE PAYMENT

5

reasonableness of the Settlement. The Court has approved the Settlement, Notice has been sent to all Class Members, and the Notice Procedure has been completed. The Court enforced  the Settlement and issued a Court Order enforcing the terms set forth in the MOU. (Exh. A)

## A.  THE SETTLEMENT IS ENTITLED TO A PRESUMPTION OF FAIRNESS

A presumption of fairness exists where: (1) The settlement is reached though arm's length bargaining; (2) Investigation and discovery are sufficient to allow counsel and the Court to act intelligently; (3) Counsel is experienced in similar litigation; and (4) the percentage of objectors is small. (*Dunk v. Ford Motor Company*, supra, 48 Cal.App.4[th] at 1802.)

To prevent fraud, collusion or unfairness to the Class, the settlement or dismissal of a class action requires court approval. (*Malibu Outrigger Bd. of Governors v. Superior Ct*, (1980) 103 Cal.App.3d 573, 578-579.) The purpose of the requirements is the protection of the Class Members, including the named plaintiff, whose rights may not have been given due regard by the negotiating parties. (*Officers for Justice v. Civil Service Com., Supra*, 688 F.2d at 624.) The trial court has broad powers to determine whether a proposed settlement in a class action is fair. (*Mallick v . Superior Court*, (1979), 89 Cal.App.3d 434.)

At the Final Approval Hearing the Court should consider the relevant factors, such as the strength of the plaintiff's case, the risk, expenses, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant and the reaction of the Class Members to the proposed settlement. (*Officers for Justice v. Civil Service Co., supra* 688 F.2d at 625.) "This list is not exhaustive and should be tailored to each case. Due regard should be given to what is otherwise a private consensual agreement between the parties." (*Dunk v. Ford Motor Company, supra,* 48 Cal.App.4[th] at 1801.)

\\\

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AWARD OF ATTORNEY'S FEES & COSTS & CLASS REPRESENTATIVE INCENTIVE PAYMENT

6

## B.  THE SETTLEMENT WAS REACHED THROUGH ARM'S LENGTH NEGOTIATIONS

This settlement was reached through arm's length negotiations as exemplified by the litigation positions.

Defendant believed and maintained that even if the Class was certified, it had a good chance of defeating the claims on the merits. Defendant contended that certain legal issues precluded Plaintiff's claims. The Defendants have always contended that they made meal and rest breaks available to Class members and never took any affirmative action in preventing them from a second meal and rest break, which was the subject matter of this litigation. Defendants have asserted all defenses available under *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal. 4th 1004, 273 P.3d 513, 139 Cal. Rptr. 3d 315.

On the other hand, while Class Counsel was ultimately confident in the merits of its legal position, Plaintiffs were put in the position of negotiating a settlement at this juncture or face years of litigation to achieve a verdict that may not have been collectable for numerous years due to potential appellate issues. Class Counsel determined that the settlement at this juncture, due to the damages analysis and the risks of certification, was in the best interests of the Class Members. The vast majority of Class Members would not benefit from any remedy whatsoever had the case not settled and certification was denied.

## C.  SUFFIECENT DISCOVERY AND INVESTIGATION HAS BEEN COMPLETED TO WARRANT SETTLEMENT

The stage of the proceedings and the amount of discovery completed is an important factor that the courts consider in determining the fairness, reasonableness, and adequacy of a settlement. (In re *Warner Communications Sec. Litig.*, 618 F.Supp. 735, 741 (S.D.N.Y. 1985), affirmed, 198 F.2d 35 (2d Cir. 1986); (*Ellis v. Naval Air Rework Facility*, _87 F.R.D. 15, 18 (N.D Cal, 1980), affirmed, 661 F.2d 939 (9th Cir. 1981); *Boyd v. Bechtel Corp.*, (N.D. Cal.

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AWARD OF ATTORNEY'S FEES & COSTS & CLASS REPRESENTATIVE INCENTIVE PAYMENT

7

1979), 485 F.Supp. 610, 616-617.) Plaintiff's counsel conducted meaningful discovery. The litigation reached a stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases." (*Warner Communications*, 618 F.Supp. at 745; Ellis, 87 F.R.D., at 18; Boyd, 485 F.Supp. at 616-17.)

Plaintiff was provided with relevant electronic employment records, under penalty of perjury, and reviewed by experts. Defendant also provided information regarding composition of the class and shift data. Both sides conducted thorough factual and legal research and thorough investigations in order to properly analyze their claims and defenses. Accordingly, this Court should find that the Proposed Settlement was intelligently reached and merits approval.

### D.  CLASS COUNSEL IS EXPERIENCED AND ENDORSE THE SETTLEMENT

Experienced counsels, operating at arm's length, have weighed all of the foregoing factors and endorse the proposed settlement. As the courts have explained, the view of the attorneys actively conducting the litigation is "entitled to significant weight." (Fisher Bros. v. Cambridge-Lee Industries Inc., (E.D. Pa. 1985) 630 F.Supp. 482, 488; see also Ellis, 87 F.R.D. at 18; Boyd 485 F. Supp. at 616-617.)

Class Counsel has experience not only in class actions and employment litigation, but specifically in wage and hour class actions. Class Counsel is experienced and qualified to evaluate the Class claims and viability of the defenses. (See Perez Dec. ¶ 2) The recovery for each Class Member is substantial, given the risks inherent in litigation and the defenses asserted. This settlement is fair, adequate and reasonable and in the best interests of the Class.

Class Counsel is experienced in class action litigation and have achieved an excellent settlement in this case, as set forth in the Settlement Agreement and Stipulation of Settlement and the present motion. The proposed settlement provided substantial benefit to the Class and was reached after aggressive, contentious litigation, Plaintiffs' Counsel's request for attorneys' fees, reimbursement of costs, and Class Representative Enhancements is fair, reasonable and

adequate, and in the best interests of the Class. Accordingly, Final Approval should be granted.[3]

## E.  ALL OF THE CRITERIA FOR CLASS CERTIFICATION ARE SATISFIED

### 1. The Settlement Class Is Ascertainable and Sufficiently Numerous

#### a. The Settlement Class Is Ascertainable

The Class is readily ascertainable because all Class Members worked for the Defendant within the Class Period and has already been identified through Defendant's employee and payroll records. (*Rose v. City of Hayward*, (1981) 126 Cal.App.3d 926, 932.) (Finding that "[c]lass member are 'ascertainable' where they may be readily identified without unreasonable expense or time by reference to official records".)

#### b. The Numerosity Requirement Is Satisfied

The numerosity requirement is fulfilled simply when the individual joinder of all plaintiffs would be impracticable. A proposed class numbering "as few as 40 class members should raise a presumption that joinder is impracticable," thus satisfying the numerosity requirement. 91 Alba Conte & Herbert Newberg, Newberg on Class Actions, §3:5 (4th ed. 2002).) Here, joinder of 517 Class Members would be impracticable and thus, a class wide proceeding is clearly preferable and appropriate.

### 2. Common Issues of Law and Fact Predominate over Any Individual Issues

The Court should grant class certification when questions of law and fact common to all class members predominate over any questions affecting *only* individual class members. (Hicks v. Kaufman & Broad Home Corp., (2001) 89 Cal.App.4th 908, 916 ("As a general rule, if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages. In order to determine whether common questions of fact predominate, the trial court must examine the issues framed

---

[3] Plaintiff's Class Counsel has 30 years' experience and has been Lead Class Counsel in numerous jurisdictions including: US District Court Eastern District of California.

by the pleadings and the law applicable to the causes of allegation alleged".)

The commonality and predominance requirements are "easily met," because "[when] the defendant has engaged in some course of conduct that effects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the person's affected." (*Gen'l Tel. Co. of Southwest v. Falcon*, (1982) 457 U.S.147, 155.) Further, the fact that "calculation of individual damages may at some point be required does not foreclose the possibility of taking common evidence on [liability issues]." *(Sav-on Drug Stores Inc. v. Superior Court,* (2004) 34 Cal.4th 319,332) (Holding that the legal question of whether the plaintiff-employees were nonexempt and therefore entitled to overtime was a common question the predominated over the individual questions of each employee's duties performed and hours worked); (*Clothesrigger Inc. v. GTE Corp.*, 191 (1987) Cal.App.3d 605, 617) ("the necessity for class members to prove their own damages does not mean individual fact questions predominate.")

The Class has been defined as "All current and former non-exempt employees of Defendant who were employed by Defendant who are or have been, within the last four (4) years and continuing while this action is pending (the "Class Period"), employed in Siemens establishments who have been subjected to some or all of the following practices:

(1) denied lawfully required second meal breaks and/or rest periods based on an extended daily work schedule;

(2) deprived of accurate and timely wage and hour statements; and

(3) subjected to the unfair business practices of.[4]

Employees working outside of California and all exempt employees working in California are expressly excluded from the Class."

---

[4] There are no other Siemens Plants in California that employ nonexempt employees subject to this action and settlement.

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AWARD OF ATTORNEY'S FEES & COSTS & CLASS REPRESENTATIVE INCENTIVE PAYMENT

10

1    The common questions of the law and fact in this case all stem from the Class Members'

2    not receiving a second meal or rest break following a 10 hour work shift, under California law

3    during the Class Period. Plaintiff and the Class Members all seek the same remedies. These

4    common issues predominate over individual issues, as all Class Members will rely on identical

5    evidence to establish liability. Under such circumstances, the commonality and predominance

6    requirement is satisfied. (*Stephen v. Montgomery Ward & Co Inc.* (1987) 193 Cal.App.3d 411,

7    421.)

8          **3. The Named Plaintiff's Claims Are Typical**

9          The representative plaintiff's claims are typical of a class where they arise from the same

10   event, practice or course of conduct that gives rise to the claims of other class members, and if

11   their claims rest on the same legal theories. (Classen v. Weller, (1983) 145 Cal.App.3d 27, 47);

12   (*B.W.I Custom Kitchens v. Owens-Illinois Inc.*, (1987) 191 Cal.App.3d 1341, 1347) ("[I]t has

13   never been the law in California that the class representative must have identical interests with

14   the class members.") In this case, the Mr. Whitley claims are typical of the Class Members'

15   claims because they arise from the same factual basis and are based on the same legal theories.

16   (Id.) Accordingly, the typicality requirement is satisfied.

17          **4. The Representative Plaintiffs and Class Counsel Adequately Represent the Class**

18          **Members.**

19          The adequacy requirement is met by fulfilling two conditions: (1) the named Plaintiff

20   must be represented by counsel qualified to conduct the pending litigation, and (2) the named

21   Plaintiff's interests cannot be antagonistic to those of the class. (*McGhee v. Crocker-Citizens*

22   *Nat. Bank,* (1976) 60 Cal. App.3d 442, 451.)

23          Both conditions are met here. First, the Representative Plaintiff and the Class are

24   represented by experienced and competent counsel. Class Counsel is highly qualified and has

25   served as class counsel in numerous class actions. (See Perez Decl. ¶) Thus, there can be no

26   ───────────────────────────────────────────────

27   PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AWARD OF ATTORNEY'S FEES
     & COSTS & CLASS REPRESENTATIVE INCENTIVE PAYMENT

28                                              11

doubt but that Class Counsel is qualified, experienced and generally able to conduct the proposed litigation." *Miller v. Woods,* (1983) 148 Cal.App.3d 862, 875.) Second, the Representative Plaintiff has no conflicts with the Class, and his interests are aligned with the interests of the Class. Further, as demonstrated by his agreement to serve as representative for the Class with Class Counsel in prosecuting this litigation, the Representative Plaintiff is committed to the Class. Accordingly, the adequacy requirement is satisfied.

### 5. Class Treatment Is Superior to the Alternatives

Courts have long recognized  that the class action device often provides the sole procedural mechanism by which many individuals harmed by corporate wrongdoing can band together to achieve justice. Absent class treatment, similarly situated consumers with relatively small but nevertheless meritorious claims for damages would, as a practical matter, have no means of redress because of the time, effort, and expense required to prosecute individual actions. (*See Hanlon*, 150 F.3d at 1023.) The United States Supreme Court has stated that, "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. The class action solves this problem by aggravating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." (*Amchem Prods. v. Windsor,* (1997) 521 U.S. 591, 617) (citation and quotation omitted).)

Other relevant considerations regarding superiority include the improbability that each class member will come forward to prove his or her separate claim and whether the class approach would serve to deter or redress the alleged wrongdoing. (*Linder v. Thrifty Oil Co.,* (2002) 23 Cal.4th 429, 435).) In employment cases, concerns such as fear of the employer, lack of representation, size of claim, and the employee's perception about the difficulty of litigation, increase the likelihood that an employer will not be held accountable. Acknowledging these concerns, courts have noted that  "[t]he risk entailed in suing one's employer are such that the

few hardy souls who come forward should be permitted to speak for others when the vocal ones are otherwise fully qualified." *(St. Marle v. Eastern RR Ass'n*, (S.D.N.Y. 1976) 75 F.R.D. 443, 449) (overruled as to damages and liability but not as to class certification).) Here, the class approach clearly serves to deter and redress the alleged wrongdoing by ensuring that all Class Members' claims are addressed.

Further, where, such as here, the individual claims are relatively small and the socio-economic status and sophistication of the Class Members contrasts greatly to the Defendant, a class action is particularly appropriate because the size of the individual claims "would prove uneconomic for potential plaintiffs" to pursue individually, as litigation costs would dwarf potential recovery." (Hanlon, 150 F.3d at 1023.) These issues from a practical standpoint generally lead to the unbalanced situation where the employer is represented by counsel but, the employee who seeks redress is not. Each of the above reasons compels the conclusion that a class action is the preferred method of resolution for this case.

## III.  AN AWARD OF ATTORNEYS FEES IS REQUESTED WHEN A COMMON FUND HAS BEEN CREATED FOR THE BENEFIT OF THE CLASS

Class Counsel's application for an award of attorneys' fees in amount of twenty-eight percent of the settlement created on behalf of the Class is reasonable and fair. This amount was approved in the Order Enforcing Settlement signed on June 1, 2015.The requested fee falls in the Courts benchmark for attorneys' fees of 20% to 50% of a common fund and is fair compensation for undertaking complex, risky, expensive, and time-consuming litigation on a contingent basis.

## A.  CLASS COUNSEL'S FEE AWARD IS PROPERLY CALCULATED AS A PERCENTAGE OF THE TOTAL COMMON FUND CREATED FOR THE CLASS

Class Counsel seeks a fee award calculated as a percentage of the total value of settlement, for the successful prosecution and resolution of this action. California state and federal courts have recognized at an appropriate method for determining the award of attorney's

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AWARD OF ATTORNEY'S FEES & COSTS & CLASS REPRESENTATIVE INCENTIVE PAYMENT

13

fees is based on a percentage of the total value of benefits to Class members by the settlement. (*Serrano v. Priest*, (1977) 20 Cal.3d 25, 34 [Serrano III]; *Boeing Co. v. Van Gemert*, (1980) 444 U.S. 472, 478; *Vincent v. Hughes Air West, Inc.* (9th Cir. 1977) 557 F.2d at 769.)

### The Common Fund Doctrine

The Common Fund Doctrine is predicated on the principle of preventing unjust enrichment. When a litigant's efforts create or preserve a fund from which others derive benefits, he may require the passive beneficiaries to compensate those who created the fund. Both California state and federal courts have embraced this doctrine. (*Serrano III, supra* at 35; *Vincent v. Hughes-Air West Inc., supra*, at 769.)

As held in *Bell v. Farmers, Insurance Exchange*, (2004) DJDAR 1440, 1442, the court entered an order adopting plaintiff's revised plan of distribution. There, plaintiffs plan provided for the distribution of a damages fund consisting of the award for unpaid overtime ($90,009,208.12), plus prejudgment interest, less costs and fees payable to class counsel <u>as a percentage of the common fund</u>. Therefore, the common fund approach appears to be a preferred method of awarding fees.

Since Serrano III, supreme there has been a "ground swell of support for mandating the percentage-of-the-fund approach in common fund cases. " (*Lealao v. Beneficial California, Inc.*, (2000) 82 Cal.App. 4th at 27.) *Lealao* discusses at length the judicial perception of the lodestar method as unfair and arbitrary for fostering collusively low settlements for a high fee award and for placing the trial court in the unfavorable position of determining reasonable hours and billing rates. (Id. at 29-30.) According to *Lealeo*, these sentiments are "widely shared" and have stimulated a greater judicial willingness to award fees as a percentage-of-the-fund. (*Id.* at 30.) As a result, the Ninth Circuit now prefers the percentage-of-the-fund approach in common fund cases. (Id.at 31.)

Here, it is clear that a common fund has been created and that the requisites supporting

1  payment of fees by the beneficiaries of that fund are satisfied.

2      For Class Counsel, the fees in this case were wholly contingent in nature and the case

3  presented far more risk than the usual contingent fee case. There was a prospect of enormous

4  costs inherent in class action litigation, as well as a long battle with large corporate defendant

5  who had retained a premier defense firm. That prospect has previously become reality, in both

6  trial courts and the Court of Appeals in other wage and hour Class litigation. Class Counsel

7  risked not only a great deal of time, but also a great deal of expense to ensure the successful

8  litigation of this action on behalf of Class Members.

9                          **Evolution of the Percentage Method**

10      Ever since the Common Fund Doctrine found its genesis in the late- nineteenth century,

11  courts have awarded fees based on a percentage basis in common fund cases. In arriving at a

12  reasonable percentage feel award, courts considered a variety of factors but focused on the

13  particular circumstances of the case in fixing a percentage of the common fund created. During

14  the late 1960's and early 1970's there was a temporary turn toward the "lodestar" method, but

15  that trend soon reverted to the percentage method. As time passed and courts were forced to

16  wade through voluminous and often indecipherable time records, it became evident that

17  utilization of the loadstar method had reached a point of diminishing returns.

18  As the court observed in *In re Activision Securities Litigation*, 723 F.Supp. 1373, 1375 (9th Cir.

19  1989):

20

21          "The question this court is compelled to ask is, "is this process
           necessary?" Under a cost-benefit analysis, the answer would be a
22         resounding, 'No!' Not only do the    Lindy, Kerr, and Johnson
           analysis consume an undue amount of court time with little
23         resulting advantage to anyone, but, in fact, it may be to the
           detriment of the class members. They are forced to wait until the
24         court has done a thorough, conscientious analysis of the attorneys'
           fee petition. Or, Class Members may suffer a further diminution of
25         their fund when a special master is retained and paid from the fund.
26

27

28

> Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must depend on a lodestar approach, there is little incentive to arrive at an early settlement."

Since Blum v. Stenson, (9184) 465 U.S. 886, where the Supreme Court approved a 'percentage of fund' as being an appropriate fee award, courts have increasingly rejected the lodestar approach. This trend recognizes that compensating Class Counsel in Class litigation on a percentage basis (common fund) makes sense because (1) it is consistent with the private marketplace where contingent fee attorneys are customarily compensated on such a basis; (2) it aligns the interests of Class Counsel and absent Class Members in achieving the maximum possible resolution of the case; and (3) it augers for the most efficient and expeditious resolution of the litigation by providing an incentive for early, yet reasonable, settlement. Class Counsel respectfully submits that an award should be made here on a percentage basis.

## B.  THE ATTORNEYS' FEES REQUIRED BY CLASS COUNSEL ARE WELL WITHIN THE RANGE OF FEES IN COMPARABLE CASES

A review of class action settlements over the past 10 years shows that the courts have historically awarded fees in the range of 20% to 50%, depending upon the case circumstances. Class Counsel's requested fee of one-third is well within the range of reasonableness. In discussing the fee ranges, the court in *In re Activision Securities Litigation*, (N.D.Cal. 1989) 723 F.Supp. 1373, 1378, noted that fees typically range from 20% to 50%.

Newberg is in accord:

"No general rule can be articulated on what is a reasonable percentage of a common fund. Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the Class, although somewhat larger percentages are not unprecedented." *(Newberg on Class Actions, 3rd Ed., 1992, §14.03.)*

---

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AWARD OF ATTORNEY'S FEES & COSTS & CLASS REPRESENTATIVE INCENTIVE PAYMENT

16

With regard to percentage fee awards, Newberg states:

"[A]chievement of a substantial recovery with modest hours expended should not be penalized but should be rewarded for considerations of time saved by superior services performed." (Newberg on Class Actions, 3rd Ed., § 14.01, p.14-10:14-11.

Attorney fee applications in California class actions based upon a percentage of a common fund as a "benchmark" now enjoys substantial support by the Ninth Circuit Court of Appeals, as well as various state courts. (*Paul Johnson Alston & Hunt v. Graulty*, (9th Cir.1989) 886 F.2d 268; *Washington Public Power Supply Secut. Lit v. City of Seattle*, (9th Cir. 1994) 19 F.3d 1291.) California state courts have also approved use of the percentage of the fund to calculate reasonable attorney fee awards. (Dunk v. Ford Motor Co., (1996) 48 Cal.App.4th 1794, 1808.) [the percentage method calculates attorney fees as a reasonable percentage of the common fund and may be used where the amount of the settlement is a certain or easily calculable sum of the money].) Plaintiff's counsel has been the only counsel to represent Class Members in this matter and has borne the entire risk and costs of litigation on a pure contingency basis.

The complexity of this matter was complicated by the fact that many Class members are current employees of Defendant, who have been reluctant to participate in Plaintiff's investigation due to perceived fear of retribution by the employer. Further, this was a complex matter involving unique legal and factual issues and the circumstances of this case warrant approval of Plaintiff's request for attorney's fees in the amount of (28%) twenty-eight percent of the total settlement value, or $277,200.00.[5]

## C.  THE RISKS OF LITIGATION

It is recognized that one of the primary factors justifying an enhanced attorneys' fees reward is the attendant risks inherent in the litigation. As observed in City of Detroit v. Grinnell Corporation, (2d Cir. 1974) 495 F.2d 448, 470:

---

[5] Class Counsel's retainer agreement provides for 35% of the gross recovery.

> "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who had agreed to pay for his services, regardless of success. Not, particularly in complicated cases producing large recoveries is it just to make a fee depend solely on the reasonable amount of time expended."

A substantial effort, and the resources of Plaintiff's firm, have been able to secure an outstanding settlement on behalf of the Class Members. Defendant has vigorously contested liability, the amount of claimed damages, and the propriety of class certification. Plaintiffs would have faced substantial obstacles in demonstrating that Class certification is appropriate and then in establishing Defendant's liability and damages.[6]

## IV.  THE COURT SHOULD APPROVE THE REQUEST FOR REIMBURSEMENT OF COSTS

The request for reimbursement of costs is fair and reasonable. The costs are all litigation related costs. The authority for the court to award this amount is the parties' Settlement Agreement and Stipulation of Settlement and the amount is reasonable in light of the realities of the case. As of September 14, 2015, Class Counsel have incurred $54, 746.00 in costs, including Class Administrative Fees, Expert Fees, etc. (See Perez Dec.)

## V.  THE CLASS REPRESENTATIVE ENHANCEMENT FEE IS REASONABLE AND STANDARD IN CLASS ACTIONS

The Named Plaintiff respectfully requests an enhancement of $7,500.00. This amount is proper because of Mr. Whitley's significant involvement in this litigation.

Mr. Whitley has been involved throughout premediation and mediation and was instrumental in keeping Class Counsel advised of changes and policies of Defendant, issues which are/were occurring and affected the Class members. He was involved in analyzing

---

[6] The Parties accepted the Mediator's Proposal on May 22, 2014 and a fully executed Memorandum of Understanding was signed by all parties on July 2, 2014. Final Approval was set for October 1, 2015. This reflects a considerable passage of time in the opinion of Class Counsel and Defendant's Counsel.

---

documents, personal data and provided significant input about Siemens policies. He spent a significant amount of time on this. Furthermore, he was involved in this settlement process, advised Class Counsel on circumstances relevant to settlement considerations (See Perez Dec.)

Courts have routinely granted approval of settlements containing such enhancements. In *League of Martin v. City of Milwaukee*, (E.D. Wis. 1984) 588 F. Supp. 1004, the court held that the proposal settlement properly granted the named plaintiff individual relief. It is "not uncommon for Class Members....to receive special relief in settlement… [The Plaintiff]…had been instrumental in prosecuting this lawsuit since the date it was filed." (*Id* at 1024.) *In Kvriazi v. Western Electric. Co*. (D.N.J. 19810 527 F.Supp. 18, a named plaintiff in a Title VII class action was awarded individual relief of back-pay and interest, reinstatement, punitive damages and counsel fees. Similarly, in *Women's' Committee for Equal Employment Opportunity v. NBC*, (SDNY 1977) 76 F.R.D. 173, the court approved as fair a settlement that included awards to 16 named plaintiff of virtually all the damages they sought.

Here, this litigation has resulted in a valuable benefit to the Class. The enhancements should be awarded for this commitment, dedication and instrumental assistance to Class Counsel. Accordingly, the Court should find that the enhancements are fair and reasonable.[7]

## VI. CONCLUSION

As set forth in this Motion, Class Counsel's request for attorneys' fees, reimbursement for costs, and request for Class Representative Enhancements is fair, reasonable and adequate.

\\\

\\\

---

[7] Class Members will each receive from five hundred to several thousand dollars, which reflect an extremely good and fair settlement.

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AWARD OF ATTORNEY'S FEES & COSTS & CLASS REPRESENTATIVE INCENTIVE PAYMENT
19

The standards for Final Approval have been met. Accordingly, Class Counsel respectfully requests that the Court grant Final Approval of the Class Action Settlement, Final Approval of the Request for Attorney's Fees, Costs, and Class Representative Enhancements, and to enter judgment.


Executed this 14th day of September, 2015, in Sacramento, California.


By:   /S/*Anthony M. Perez, Jr.*

Anthony M. Perez, Jr.
Attorney for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# EXHIBIT 1

25
26

27
28

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

| | |
|---|---|
| JARRID J. WHITLEY, et al., | Case No. 2:14-cv-00099-MCE-DAD |
| Plaintiff, | STIPULATION OF CLASS ACTION SETTLEMENT |
| v. | |
| SIEMENS INDUSTRY, INC. et al., | |
| Defendants. | |

STIPULATION OF SETTLEMENT

1    This Stipulation of Class Action Settlement and Release ("Agreement" or "Settlement") is
2    made by and between Plaintiff JARRID J. WHITLEY ("Plaintiff") and SIEMENS INDUSTRY,
3    INC. ("Defendant"). Plaintiffs and Defendant collectively are referred to as the "Parties".

4    IT IS HEREBY STIPULATED AND AGREED by and among the undersigned Parties,
5    subject to the approval of the Court, that the settlement of this action shall be effectuated upon and
6    subject to the following terms and conditions.

7

8                                    **I. DEFINITIONS**

9    The following capitalized, defined terms used in this Agreement shall have the meanings
10   ascribed to them below.

11   **1.1    Action.** "Action" or "Lawsuit" shall mean the civil action that is currently pending
12   in the United States District Court, Eastern District of California, *Whitley v. Siemens Industry Inc.*,
13   2:14-cv-00099-MCE-DAD, filed on January 15, 2014.

14   **1.2    Agreement.** "Agreement" or "Settlement Agreement" means this Stipulation of
15   Settlement.

16   **1.3    Claim Amount.** "Claim Amount" shall mean the total, gross amount due to an
17   Eligible Class Member which shall be calculated pursuant to the terms of this Agreement.

18   **1.4    Claim Form.** "Claim Form" shall mean the Claim Form, substantially in the form
19   attached as Exhibit A, or as modified by Order of the Court.

20   **1.5    Claims Administrator.** "Claims Administrator" means the third-party entity
21   jointly selected by the Parties to provide notice to the Class and perform other duties relating to
22   the administration of the Settlement, including, but not limited to, payment of claims submitted by
23   Eligible Class Members.

24   **1.6    Claims Administration Costs.** "Claims Administration Costs" shall mean the fees
25   and expenses reasonably and necessarily incurred by the Claims Administrator as a result of
26   performing the settlement administration procedures and functions expressly required in this
27   Agreement and shall include all costs of administering the Settlement, including, but not limited

28

2

STIPULATION OF SETTLEMENT

1    to,   all tax document preparation, custodial fees, and accounting fees incurred by the Claims
2    Administrator; all costs and fees associated with preparing, issuing and mailing any and all notices
3    and other correspondence to Class Members; all costs and fees associated with computing,
4    processing, reviewing, and paying the Claim Amounts, and resolving disputed claims; all costs
5    and fees associated with calculating tax withholdings and payroll taxes and making related
6    payments to federal state tax authorities and issuing tax forms relating to payments made under the
7    Settlement; all fees and costs associated with any other payments to be made out of or into the
8    costs and fees associated with preparing any tax returns and any other filings required by any
9    governmental taxing authority or agency; all costs and fees associated with preparing any other
10   notices, reports, or filings to be prepared in the course of administering disbursements from the
11   Qualified Settlement Fund; and any other costs and fees incurred and/or charged by the Claims
12   Administrator in connection with the execution of its duties under this Agreement.

13           **1.7      Claims Period Deadline.** "Claims Period Deadline" shall be the date forty-five
14   (45) days after the Notice and Claim Forms are mailed to the Class Members by the Claims
15   Administrator.

16           **1.8      Class.** "Class" and "Class Members" shall mean all hourly non-exempt employees
17   of Siemens in California with any responsibility related to production at the Siemens Rails
18   Systems plant located at 7464 French Road, Sacramento, California from January 15, 2010
19   through the date of June 1, 2015, on which the Court Ordered Enforcement of Settlement.

20           **1.9      Class Counsel.** "Class Counsel" or "Plaintiff's Counsel" refers to Anthony M.
21   Perez, Perez Law Offices, 455 Capitol Mall, Suite 225, Sacramento, California, 95814.

22           **1.10    Class Period.** "Class Period" shall mean the time period of January 15, 2010
23   through the date of June 1, 2015.

24           **1.11    Class Representative Service Fee.** "Class Representative Service Fee" shall mean
25   the amount approved by the Court to be paid to Plaintiff in addition to his Claim Amount in
26   recognition of his effort in coming forth as a class representative and in consideration for his
27   execution of a general release of all claims against Defendant.

28

                                                    3

STIPULATION OF SETTLEMENT

1      **1.12**   **Complaint.** "Complaint" means the Complaint filed in the Action by Plaintiff.

2      **1.13**   **Court.** "Court" refers to the United States District Court, Eastern District of

3   California.

4      **1.14**   **Day.** Day shall mean a calendar day, unless expressly stated otherwise.

5      **1.15**   **Defendant's Counsel.** "Defendant's Counsel", "Defense Counsel" or "Counsel for

6   Defendant" shall mean Gregory G. Iskander, Littler Mendelson, P.C., Treat Towers, 1255 Treat

7   Boulevard, Suite 600 Walnut Creek, CA 94597.

8      **1.16**   **Eligible Class Member.** "Eligible Class Member" and "Claimant" mean a Class

9   Member who both does not submit an Opt-Out Request and submits a timely and validly executed

10   Claim Form.

11      **1.17**   **Eligible Shift.** "Eligible Shift" means each day from January 15, 2010 through

12   April 15, 2014, that an Eligible Class Member worked for a period of more than 10 hours in a day.

13      **1.18**   **Effective Date.** "Effective Date" shall mean the date on which all of the following

14   have occurred: the Court has entered an order dismissing the Action with prejudice, and an order

15   granting final approval of the Settlement, and the Judgment and order granting final approval have

16   become Final. For purposes of this provision, "Final" means: if no objections to the Settlement

17   are filed and/or are filed and withdrawn, the date the Court enters its order granting final approval

18   of the Settlement and its Judgment dismissing the Action with prejudice; if any objections to the

19   Settlement are filed and not withdrawn, and if no appeal, review or writ is sought from the

20   Judgment, the thirty-fifth (35th) day after entry of Judgment; or if rehearing, reconsideration

21   and/or appellate review of the Judgment is sought, the day after any and all avenues of rehearing,

22   reconsideration and appellate review have been exhausted and no further rehearing,

23   reconsideration or appellate review is permitted, and the time for seeking such review has expired,

24   and the Judgment has not been modified, amended or reversed in any way.

25      **1.19**   **Fairness Hearing.** "Fairness Hearing" or "Final Approval Hearing" shall mean

26   the hearing on the Motion for Final Approval of Class Action Settlement.

27

28

4

STIPULATION OF SETTLEMENT

1    **1.20    Maximum Settlement Amount**.    "Maximum Settlement Amount" means the
2    maximum amount that Defendant could pay under the terms of this Settlement, which is not to
3    exceed Nine Hundred and Ninety Thousand Dollars ($990,000.00).    The Maximum Settlement
4    Amount includes, without limitation, the Claims Administration Costs, the Class Representative
5    Service Fee, Court-approved attorneys' fees and costs, any employer's share of payroll taxes, and
6    the total aggregate amount of the Claim Amounts to be paid to Eligible Class Members.

7    **1.21    Named Plaintiff**.    "Named Plaintiff" or 'Plaintiff' shall mean Plaintiff Jarrid J.
8    Whitley.

9    **1.22    Net Settlement Amount**.    "Net Settlement Amount" shall mean the Maximum
10    Settlement Amount minus (a) Claims Administration Costs; (b) any Court-approved Class
11    Representative Service Fee; (c) employer's share of payroll taxes; and (d) Court-approved
12    attorneys' fees and costs to Class Counsel.

13    **1.23    Notice.**    "Notice" shall mean the Notice of Pendency of Class Action and Proposed
14    Settlement, substantially in the form attached as Exhibit B, or as modified by the Court.

15    **1.24    Opt-Out(s).**    "Opt-Out(s)" refers to Class Members who timely submit a valid Opt-
16    Out Request.

17    **1.25    Opt-Out Request**.    "Opt-Out Request" means a request for exclusion from the
18    Settlement. No special language is required.

19    **1.26    QSF.**    "QSF" shall mean the Qualified Settlement Fund established by the Claims
20    Administrator for the benefit of the Eligible Class Members and from which the Claim Amounts
21    and, if applicable, payroll taxes shall be paid.

22    **1.27    Released Claims**.    "Released Claims" shall mean any and all past, present and
23    future claims, administrative or otherwise, actions, causes of action, rights or liabilities, based on,
24    arising out of, or in any way relating to the claims alleged in the Complaint, including claims for
25    wages, statutory and civil penalties, damages and liquidated damages, interest, attorney fees and
26    costs that were or could have been alleged whether known or unknown based on the facts and
27    theories set forth in the Complaint, under California law and/or the Fair Labor Standards Act,
28

5

STIPULATION OF SETTLEMENT

1  arising out of the employment of the Class Members during the Class Period, as it relates to claims

2  for meal period and rest period violations, including but not limited to meal and rest period

3  premiums not paid, unrecorded work time not paid during meal and rest breaks, waiting time

4  penalties and wage statement violations, unfair business practices, and claims under the Private

5  Attorneys General Act ("PAGA").

6      **1.28   Released Parties.** "Released Parties" shall mean Siemens Industry, Inc., and its

7  predecessors, successors, parents, subsidiaries, affiliated and/or related entities.

8      **1.29   Settlement.** "Settlement" shall mean the compromise and resolution of claims

9  under the terms and conditions set forth in this Agreement.

10     **1.30   Settlement Class.** "Settlement Class" and "Settlement Class Member" shall mean

11 all Class Members who have not opted-out of the Settlement after Notice has been issued and who

12 are, therefore, bound by the Final Approval Order by the Court.

13                **II. FACTUAL AND PROCEDURAL BACKGROUND**

14     **2.1**   On or about January 15, 2014, Plaintiff filed this Action in the United States

15 District Court, Eastern District of California, under the Class Action Fairness Act (CAFA), 28

16 U.S.C. § 1332(d), § 1141(b), and § 1446. Venue is proper in this District because a substantial

17 part of the events or omissions giving rise to the claims occurred in this District.

18     **2.2**   Plaintiff brought this case individually and on behalf of all others similarly situated

19 against Defendant for allegedly violating California's labor and unfair competition laws.

20 Specifically, Plaintiff alleges that Defendant violated applicable provisions of the Industrial

21 Welfare Commission's ("the IWC") Wage Orders, the Labor Code, and the Business and

22 Professions Code by failing to provide non-exempt Rail System employees: 1) compliant meal and

23 rest periods;  2)  an additional hour's pay for each day a lawful meal and/or rest period was not

24 provided; 3) penalties for failure to provide lawful and accurately itemized wage statements; 4) all

25 wages owed to employees upon termination of the employment relationship; and 5) wages for

26 time worked during any meal and rest periods.  These claims in the Complaint were brought on

27 behalf of all Class Members.

28

STIPULATION OF SETTLEMENT

**2.3**    Plaintiff was formerly employed as a non-exempt fitter/welder by Defendant. Plaintiff was terminated from his employment in approximately November 2013.

**2.4**    Plaintiff alleged that Defendant employed various standardized practices which impeded employee access to off-duty meal and rest periods and did not pay employees premium pay for missed breaks. Additional allegations in Plaintiff's Complaint include derivative claims that Defendant did not lawfully itemize wage statements, did not fully pay all wages upon termination of employment, did not pay penalties under Labor Code Section 203, and conversion.

**2.5**    Defendant denied and continues to deny the allegations asserted in the Complaint and asserts that it has no liability for any of Plaintiff's or the Class Members' claims under any statute, wage order, rule, regulation, common law, or equitable theory because Defendant's policies and practices have, at all times, fully complied with all applicable California and federal laws. Defendant also contends that, if this matter were to be further litigated, it would have strong defenses on the merits and as to class certification.

**2.6**    On May 6, 2014, the Parties participated in mediation with Michael Dickstein, Esq. serving as mediator. The scheduled mediation session lasted well over twelve (12) hours, but the Parties did not reach an agreement during the initial session. Thereafter, with the assistance of the mediator and with further negotiations that continued over several weeks, the Parties reached an agreement and signed a Memorandum of Understanding on June 30, 2014.

**2.7**    The Parties reached this Agreement after having conducted significant investigation, analysis and discovery. Prior to the mediation, and in connection with the Parties' formal and informal discovery and settlement negotiations, Defendant provided Plaintiff with data concerning employees' time and payroll records, meal and rest break policies, and other documentary evidence.

**2.8**    Plaintiff and Class Counsel believe that this Agreement is in the best interest of Class Members. Specifically, Plaintiff and Class Counsel have concluded, based upon their investigation and discovery, after performing a thorough study of the law and facts relating to the claims asserted in the Action and taking into account the sharply disputed factual and legal issues

7

1   involved in this Action, the various risks attending further prosecution to trial and judgment, the
2   uncertainties of complex litigation, the strong likelihood of further appeals as litigation continues,
3   the discovery and investigation conducted to date, the expense and time necessary to pursue the
4   Action through trial, and the substantial benefits to be received by the Class pursuant to the
5   compromise and settlement of the Action, that settlement as embodied by this Agreement is fair,
6   adequate and reasonable and is in the best interests of Plaintiff and the Class. Plaintiff, on his own
7   behalf and on behalf of the Class Members, has agreed to settle the Action on the terms set forth in
8   this Agreement.

9        **2.9**     Defendant denies any liability or wrongdoing of any kind associated with this
10  Action, and further denies that, for purposes other than the settling of this Action, any part of this
11  Action is appropriate for class treatment. Defendant has denied and continues to deny each and
12  every material factual allegation and alleged claim and denies all claims as to liability, damages,
13  penalties, interest, fees, costs, and all other forms of relief, as well as the class allegations asserted
14  in the Action. Nothing herein shall constitute an admission by Defendant of wrongdoing or
15  liability or of the truth of any factual allegations in the Action. Nothing herein shall constitute an
16  admission by Defendant that the Action is properly brought as a class or representative basis other
17  than for settlement purposes. To this end, the settlement of the Action, the negotiation and
18  execution of this Agreement, and all acts performed or documents executed pursuant to or in
19  furtherance of the Settlement: (i) are not, shall not be deemed to be, and may not be used as, an
20  admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of
21  any of the factual allegations in the Lawsuit; (ii) are not, shall not be deemed to be, and may not be
22  used as, an admission or evidence of any fault or omission on the part of Defendant in any civil,
23  criminal or administrative proceeding in any court, administrative agency or other tribunal; and
24  (iii) are not, shall not be deemed to be, and may not be used as, an admission or evidence of the
25  appropriateness of these or similar claims for class certification. This Agreement and the
26  Settlement it contains are a compromise of disputed claims, as Defendant has concluded that
27  further litigation would be protracted and expensive, and would also divert management and
28

8

STIPULATION OF SETTLEMENT

employee time.  Defendant has taken into account the uncertainty and risks inherent in litigation. Defendant has, therefore, concluded that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Agreement.

### III. CONDITIONS PRECEDENT TO SETTLEMENT TAKING EFFECT

**3.1**     The Parties enter into this Agreement and the Settlement on a conditional basis. This Agreement and Settlement is contingent upon, and will become final and effective only upon the occurrence of, all of the following events: 1) The Court has entered an Order enforcing the Settlement and conditional certification of a class for settlement purposes only is agreed to by the parties, consistent with the terms described in this Agreement (or as otherwise agreed upon in writing by the Parties); 2) Mailing of the Class Notice to Class Members in accordance with the Court's Order; 3) The Court setting and conducting a fairness hearing; 4) The Court enters an Order granting final approval of the Settlement consistent with the terms described in this Agreement (or as otherwise agreed upon in writing by the Parties); 5) The Effective Date occurs, and any challenge to the Settlement, whether by objection or appeal, is resolved in favor of enforcement of the Settlement; and 6) The Court enters a Final Judgment approving the terms of this Agreement and dismissing the Action with prejudice in its entirety pursuant to the terms of this Agreement.

**3.2**     Unless the Court Orders otherwise or as otherwise agreed upon in writing by the Parties, this Agreement shall be deemed null and void *ab initio* unless each of these six conditions occurs.

**3.3**     Further, in the event that more than ten percent (10%) of the Class Members opt-out of the Settlement, this Agreement shall be deemed null and void *ab initio*, at the option of Defendant.

### IV. CONSEQUENCES OF SETTLEMENT NOT BECOMING EFFECTIVE

9

STIPULATION OF SETTLEMENT

**4.1**   This Agreement is contingent upon each of the conditions precedent in Paragraph 3.1 occurring and is entered into voluntarily by the Parties for settlement purposes only. If the Court does not grant final approval of this Settlement or, if appealed, the Settlement is not affirmed, or if the Settlement does not become effective for any other reason, the Parties agree that conditional class certification for settlement purposes only will automatically be deemed revoked. The Parties will take all steps, if necessary, to decertify the class and return the case to the "status quo" as it existed prior to the Parties seeking approval of the Settlement from the Court.   In the event that the conditional class certification for settlement purposes is deemed revoked, then the class certification for settlement purposes only shall have no precedential value and it shall not be introduced into evidence or used for any other purpose.   To the extent this Agreement is deemed void or the Effective Date does not occur or for whatever reason does not result in the final resolution of the Action, Defendant does not waive, and, instead, expressly reserves its rights to challenge all claims and allegations in the Action upon all procedural, factual and legal grounds, including, without limitation, the ability to challenge class treatment on any grounds, as well as asserting any and all other potential defenses or privileges.   Plaintiff and Class Counsel agree that Defendant retains and reserves these rights, and agrees not to argue or present any argument, and hereby waives any argument that, based on this Agreement, Defendant cannot contest class certification on any grounds or assert any and all other potential defenses and privileges if this Action were to proceed.   If the Settlement is not approved by the Court, or for some other reason the Settlement does not become final, the conditional certification of the Class shall be void and of no further effect, and all matters covered by this Agreement and the releases contained herein shall be null and void.   In such event, nothing in this Agreement or any draft thereof, or of the discussion, negotiation, documentation, or other part or aspect of the Parties' settlement discussions leading to the execution of this Agreement, or any document submitted to the Court in support of this Agreement or Court approval thereof, shall have any effect, nor shall any such matter be admissible in evidence for any purpose in the Action or in any other proceeding or forum, nor shall any such matter be used or construed by or against any Party as a determination,

10

STIPULATION OF SETTLEMENT

1   admission, or concession of any issue of law or fact in this, or any other litigation or proceeding,
2   and the Parties do not waive, and instead expressly reserve, their respective rights with respect to
3   the prosecution and defense of the Action as if this Agreement never existed.

4                                         **V. COOPERATION**

5       **5.1**     The Parties agree to use their best efforts to expedite the preparation and
6   submission of the Agreement and related documents to the Court for consideration and approval.
7   The Parties further agree to fully cooperate in the drafting and/or filing of any further documents
8   or filings reasonably necessary to be prepared or filed, shall take all steps consistent with the terms
9   of this Agreement that may be requested by the Court relating, or that are otherwise necessary, to
10  the approval and implementation of this Agreement and shall otherwise use their respective best
11  efforts to obtain the Court's approval of and implementation of this Agreement. The Parties shall
12  timely cooperate and present to the Court, for its consideration in connection with the approval of
13  this Agreement, any and all evidence as may be requested by the Court under the appropriate
14  standards for approving the proposed Settlement of the Class Claims and/or facilitated Notice to
15  Class Members.

16      **5.2**     Plaintiff and Plaintiff's Counsel agree that other than the Court-approved Notice to
17  class members, there shall be no publicity of the Settlement and Plaintiff and Plaintiff's Counsel
18  shall not post any information regarding the Action or the Settlement on any website or through
19  the internet or otherwise.

20                               **VI. SETTLEMENT CONSIDERATION**

21      **6.1**     The Maximum Settlement Amount shall not exceed Nine Hundred and Ninety
22  Thousand Dollars ($990,000.00). The Maximum Settlement Amount shall be "all-inclusive,"
23  meaning that all Claims Administration Costs, the Class Representative Service Fee, all of Class
24  Counsel's attorneys' fees and costs, and all possible claim amounts to eligible Class Members,
25  including any employer payroll taxes, shall be distributed from the Maximum Settlement Amount.

26      **6.2**     The Maximum Settlement Amount shall be distributed as follows: In connection
27  with the Final Approval Hearing, Class Counsel will submit an application for an award of

28

                                              11

1   attorneys' fees and costs of no more than Two Hundred and Seventy-Seven Thousand Two

2   Hundred Dollars ($277,200) (28% of the Maximum Settlement Amount), with the understanding

3   that the Court may award lesser amounts of fees and costs as are determined to be fair and

4   reasonable by the Court). Any amounts awarded will constitute complete consideration to Class

5   Counsel for all work performed and expenses incurred to date and for all work to be performed

6   and expenses to be incurred through the completion of the Action and its Settlement. Defendant

7   will not oppose a request for approval of the Class Counsel attorneys' fees and litigation costs as

8   stated in this Paragraph. In the event that the Court awards lesser attorneys' fees or costs than

9   requested, then any portion of the requested amounts not awarded to Class Counsel shall be a part

10  of the Net Settlement Amount. The substance of Class Counsel's application for attorneys' fees

11  and litigation costs is not part of this Agreement and is to be considered separately from the

12  Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement

13  of the Action. The Court's ruling on Class Counsel's application for attorneys' fees and litigation

14  costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for

15  Final Approval;

16       **6.3**    All Claims Administration Costs awarded by the Court shall be paid from the

17  Maximum Settlement Amount. The Parties estimate the Claims Administration Costs to be

18  approximately Fifteen Thousand Dollars ($15,000.00); Class Counsel shall seek approval for a

19  Class Representative Service Fee of Seven Thousand Five Hundred Dollars ($7,500.00) to

20  Plaintiff, or such lesser amount as may be approved by the Court. The Class Representative

21  Service Fee paid from the Maximum Settlement Amount shall be a payment separate and apart

22  from any Claim Amount that Plaintiff may be entitled to receive as a Class Member and represents

23  further consideration in exchange for the waiver and release of all wage and hour claims past or

24  present, known or unknown, that Plaintiff may have against Defendant, whether or not alleged in

25  the Action. Defendant will not oppose a motion for approval of the Class Representative Service

26  Fee. In the event that the Court awards a lesser than requested amount or no Class Representative

27

28

12

STIPULATION OF SETTLEMENT

Service Fee, then any portion of the requested amount not awarded to Plaintiff shall become a part of the Net Settlement Amount

**6.4**    Named Plaintiff Jarrid Whitley shall also receive a confidential Individual Settlement payment for any individual claims Plaintiff may have against Defendant, which is not part of this Agreement and for which Plaintiff has executed a separate confidential release. Specifically, Plaintiff has asserted retaliation and wrongful termination claims, among other things, against Defendant, and has filed individual claims with the California Labor Commissioner. The Parties agree that the amount paid to Plaintiff for his individual claims and general release may be shared with the Court *in camera* or under seal, but shall not be made public.

**6.5**    Claim Amounts shall be calculated as follows: based upon the information in the Class list provided by Defendant (and as corrected, if applicable, through the claims process), the Claims Administrator will calculate the total number of Eligible Shifts worked by all Class Members during the Class Period. The Claims Administrator will divide the Net Settlement Amount by the total number of Eligible Shifts worked by all Class Members during the Class Period. This will yield the initial dollar value per Eligible Shift. A Class Member's initial individual Claim Amount will be determined by multiplying the dollar value per Eligible Shift (as calculated by the Claims Administrator) by the total number of Eligible Shifts worked by the individual Claimant. The estimated Eligible Shifts shall be stated on the Claim Form.

**6.6**    All disputes regarding the number of Eligible Shifts worked by a Class Member or the calculation of a Class Member's Claim Amount will be resolved and decided by the Claims Administrator and the Claims Administrator's decision on all such disputes will be final and not subject to appeal. The Parties recognize and agree that the claims raised in the Action, including specifically the claims for missed meal periods and missed rest periods are extremely difficult to determine with any certainty for any given time period, or at all. The claims are subject to different calculations and formulas and currently there is uncertainty as to the applicable standard for the meal period and rest period claims. The Parties also recognize and agree that, given the

13

1  number of Class Members in California during the Class Period, it would be extremely
2  burdensome and unduly costly to discern exactly which individuals (if any) were not provided
3  meal or rest periods. The Parties hereby agree that the formula for allocating the settlement
4  payments to Eligible Class Members provided herein is reasonable and that the settlement
5  payments provided herein are designed to provide a fair settlement to the Class, despite the
6  uncertainties associated with the amounts alleged to be owed.

7      **6.7**    For the purpose of calculating applicable taxes for the payments to Eligible Class
8  Members, the Parties agree that one-half of Claim Amounts constitutes wages in the form of
9  premium pay and will be subject to tax withholding (and each Eligible Class Member will be
10 issued an IRS Form W-2 for such payment to him or her), one-half of the Claim Amount paid to
11 an Eligible Class Member constitutes penalties and interest, and will not be subject to tax
12 withholding by Defendant (and each Eligible Class Member will be issued an IRS Form 1099 for
13 such payment to him or her). The Claims Administrator shall calculate and deduct required
14 withholdings and payroll taxes from the Eligible Class Member's wage amount prior to mailing
15 the Claim Amount. Defendant shall not be responsible for payroll tax payments on any portion of
16 the Maximum Settlement Amount that is attributable to Class Counsel's attorneys' fees and costs,
17 Claims Administration Costs, penalties, or interest. The Parties further understand that the Class
18 Representative and any Eligible Class Member who receives any Settlement Payment pursuant to
19 this Agreement shall be solely responsible for any and all tax obligations associated with such
20 receipt, except as otherwise expressly set forth in this Agreement.

21     **6.8**    This Settlement is Claims Made with no reversion to Defendant. Any portion of the
22 Net Settlement Amount that is not claimed, and any checks issued that are uncashed for more the 90
23 days after issuance, shall be donated to Sacramento Court Appointed Special Advocates (CASA).

24     **6.9**    Any amounts Defendant has agreed to pay under this Settlement shall remain the
25 property of Defendant until the money is transferred to the Claims Administrator, pursuant to the
26 terms of this Agreement and the Court's Final Judgment.

27

28

14

STIPULATION OF SETTLEMENT

## VII. ORDER ENFORCING SETTLEMENT GRANTED JUNE 1, 2015.

**7.1**     The Court, after considering Defendant's Motion to Enforce the Settlement outlined in the executed Memorandum of Understanding, Ordered the Enforcement of said Settlement, principle terms of which are restated herein and incorporated as part of this agreement. (See Exhibit A to this Agreement.)

**7.2**     If for any reason the Court does not approve this Agreement, fails to enter the Final Judgment, or if this Agreement is terminated for any other reason, the Parties agree that class certification for settlement purposes only will automatically be deemed revoked. In the event that class certification for settlement purposes is deemed revoked, then the prior class certification for settlement purposes shall have no precedential or *res judicata* value in this Action or in any other case and it shall be of no force or effect whatsoever, it shall not be referred to or utilized for any purpose whatsoever, it shall not be introduced into evidence, and Defendant shall retain the right to dispute the appropriateness of class certification.

**7.3**     The Parties shall request that the Court enter an order that pending final approval, Class Members who do not opt-out of the Settlement are barred from instituting, prosecuting, or participating in any claims or actions against the Released Parties which fall within the definition of the Released Claims and that any pending actions against the Released Parties, whether in court or arbitration, are stayed on an interim basis as to any claims which fall within the definition of the Released Claims.

## VIII. CLAIMS ADMINISTRATION AND COURT FACILITATED NOTICE.

**8.1**     The Parties agree to use the services of CPT. ("Claims Administrator") to administer the Settlement. The actions of the Claims Administrator shall be governed by the terms of this Agreement. Defendant or Class Counsel may engage in communications with the Claims Administrator without notice to the other party, any Class Members, or the Court.

**8.2**     In the event that either Defendant or Class Counsel take the position that the Claims Administrator is not acting in accordance with the terms of the Agreement, such party shall meet

15

STIPULATION OF SETTLEMENT

1 | and confer first with opposing counsel and then, if necessary, with the Claims Administrator
2 | and/or the Court.

3 | ## IX. LIST OF CLASS MEMBERS.

4 | **9.1** Within fifteen (15) days from the execution of this Agreement, Defendant shall
5 | provide to the Claims Administrator a list of all Class Members in electronic form. The list will
6 | identify each Class Member's name, last known mailing address, Social Security Number, and
7 | Eligible Shifts.

8 | **9.2** Defendant's records will be presumed determinative with respect to whether an
9 | individual is a Class Member and the number of Eligible Shifts worked by the Class Member. If
10 | for any reason a Class Member disagrees with Defendant's calculation of his or her number of
11 | Eligible Shifts, the Class Member shall be provided the opportunity to raise such disagreement and
12 | present any supporting documentation to the Claims Administration along with his or her Claim
13 | Form. The Claims Administrator, in consultation with Defense Counsel, shall have the authority,
14 | based upon the information from Defendant and any information provided by the Class Member,
15 | to issue a final non-appealable decision with regard to the number of Eligible Shifts worked by the
16 | Class Member.
17 |

18 | **9.3** The Class list, and any other data provided by Defendant to the Claims
19 | Administrator, shall be treated as confidential and not subject to disclosure by the Claims
20 | Administrator to Class Counsel (except that relevant information may be provided to Class
21 | Counsel to the extent necessary to address a disputed claim or to respond to a specific inquiry
22 | from a Class Member) or to any third party (except to the extent necessary for the Claims
23 | Administrator to perform its obligations described in this Agreement and subject to prior approval
24 | by Defense Counsel) and shall not be used by the Claims Administrator for any purpose other than
25 | as permitted by this Agreement. Further, the Claims Administrator shall use commercially
26 | reasonable efforts to secure the data provided by Defendant at all times so as to avoid inadvertent
27 | or unauthorized disclosure or use of such data other than as permitted by this Agreement, and shall
28 | destroy the data (and all copies of it) in a complete and secure manner when such data is no longer

16

STIPULATION OF SETTLEMENT

1 required for purposes of this Agreement. At no time during the settlement process will any Class
2 Member's address, telephone number or Social Security Number be filed with the Court, except
3 under seal as may be ordered by the Court. The Claims Administrator shall ensure that the Notice
4 and any other communications to Class Members shall not include the Class Members' Social
5 Security Number, except for the last four digits.

## X. NOTICE TO CLASS MEMBERS

**10.1** Upon receipt of the list of Class Members, the Claims Administrator will
perform a search using the United States Postal Service National Change of Address List to update
each Class Member's last known address.

**10.2** Within twenty one (21) days after the execution of this Agreement, the
Claims Administrator shall mail, via First Class postage-prepaid United States mail, to all Class
Members, at their most recent addresses, the Notice and Claim Form (collectively, the "Notice
Packet"). In the event that any Notice Packet is returned as undeliverable, the Claims
Administrator will promptly have data searches conducted, including performing a search using
the Class Member's Social Security Number to obtain a current valid mailing address for the Class
Member. Following each search that results in a corrected address, the Claims Administrator shall
promptly re-send the Notice Packet to the Class Member at the corrected address via First Class
postage-prepaid United States mail. For Class Members who are re-sent the Notice Packet
pursuant to this Section, the Claims Period Deadline shall be extended an additional fifteen (15)
calendar days. The Class Administration will also send a fifteen (15) day reminder notice to all
Class Members.

**10.3** Compliance with these procedures shall constitute due and sufficient notice
to Class Members of this Settlement and shall satisfy the requirement of due process. Nothing
else shall be required of, or done by the Parties, Class Counsel, and Defense Counsel to provide
notice of the proposed Settlement to the Class. In the event the procedures in the Agreement are
followed and a Class Member, nonetheless, does not receive the Notice Packet, the intended

17

STIPULATION OF SETTLEMENT

1   recipient shall remain a Class Member and will be bound by all the terms of this Agreement,

2   including the Release of Claims and any orders of the Court.

3       **10.4**        The Claims Administrator will maintain all Opt-Out Requests and Claim

4   Forms received from Class Members.   After the Notice Packets have been mailed to Class

5   Members, the Claims Administrator shall, on a weekly basis, provide counsel for the Parties with

6   an updated status report that states the number of timely and valid Claim Forms received, the

7   number of timely and valid Opt-Out Requests received, the number of deficient or untimely Claim

8   Forms received, the number of deficient or untimely Opt-Outs received, the number of objections

9   received and other data as requested.

10      **10.5**        Prior to the filing of the Final Approval Motion, the Claims Administrator

11  shall provide to Class Counsel a written verification/declaration signed under penalty of perjury

12  that, pursuant to the Court's Order, it mailed the Court-approved Notice Packet to the Class

13  Members.

14              **XI. CLASS MEMBERS' RETURN OF CLAIM FORMS**

15      **11.1**        All Claim Forms must be submitted within 45 days of mailing, and shall be

16  sent directly to the Claims Administrator at the address stated on the Claim Form.   The Claims

17  Administrator shall review the Claim Forms received and ensure that each Claim Form has been

18  validly completed and signed by a Class Member.   Prior to the filing of the Final Approval

19  Motion, the Claims Administrator will certify to Counsel for the Parties the total number of timely

20  and valid Claim Forms and Opt-Out Requests received and other data as requested.

21

22      **11.2**        The entitlement of any Eligible Class Member to receive a portion of the Net

23  Settlement Amount is contingent upon the Eligible Class Member having a valid Social Security

24  Number or taxpayer identification number, the Claim Form being signed and dated as provided for

25  therein; and the Claim Form being mailed, postage prepaid, by the Class Member in an envelope

26  postmarked on or before the claim submission deadline and addressed to and received by the

27  Claims Administrator. The Claim Form shall contain a paragraph advising class members that by

28  signing the Claim Form, they are opting in to a release of FLSA and PAGA claims.

STIPULATION OF SETTLEMENT

**11.3**      In the event a Claim Form is timely submitted but is deficient in one or more respects, the Claims Administrator shall return the Claim Form to the Class Member with a letter explaining the deficiencies and advising that the Class Member shall have fifteen (15) calendar days from the date of the deficiency notice to correct the deficiencies and re-submit the Claim Form, even if such date is beyond the Claims Submission Deadline. If the Class Member fails to correct the deficiencies in the submitted Claim Form, the Class Member will remain bound by the Settlement (including the Release of Claims), but will not be entitled to receive any monetary payment in connection with the Settlement.

**11.4**      If a Class Member completes and submits both a Claim Form and an Opt-Out Request, the Claims Administrator will promptly send the Class Member a cure letter requesting clarification of the Class Member's intent. The cure letter will state that unless the Class Member clarifies, in writing, by the Claims Period Deadline that he or she intends to Opt-Out, the Class Member will be deemed to be an Eligible Class Member and shall be bound by the terms of this Agreement, including the Release of Claims.

**11.5**      The Parties shall confer regarding any late Claim Forms submitted and, if the Parties jointly agree, may decide to accept the submission of a late Claim.

## XII. OPTING OUT OF THE SETTLEMENT

**12.1**      Opt-Out Requests must be sent to the Claims Administrator and be postmarked no later than 45 days from mailing. The date of the postmark on the return-mailing envelope shall be the exclusive means used to determine whether an Opt-Out Request has been timely submitted. Class Members who wish to Opt-Out must make such request in writing. No special language is required. No Opt-Out Request may be made on behalf of a group of Class Members. Any Class Member who submits a valid and timely request for exclusion will not be entitled to any monetary recovery, will not be bound by this Agreement, and will not have any right to object or appeal. Class Members who fail to submit a valid and timely Opt-Out request shall be bound by all terms of the Agreement and the Order and Final Judgment, regardless of whether they otherwise have requested exclusion from the Settlement. The Parties and their

19

1   Counsel shall not encourage Class Members to Opt-Out of this Agreement. Defendant and their
2   agents shall not engage in a substantive discussion with any Class Member about whether to
3   submit an Opt-Out Request. If Defendant is asked about the settlement by Class Members, or
4   Class Members inquire of Defendant for advice in opting out or submitting a Claim Form, the
5   Class Member shall be instructed to call the Claims Administrator or Class Counsel.

6      **12.2**      Defendant shall retain the right, in the exercise of its sole discretion, to
7   nullify the Settlement if Class Members representing more than an aggregate of 10% of the
8   Eligible Shifts opt out of the Class.

9                              **XIII.   OBJECTIONS**

10      **13.1**      The Notice shall advise Class Members of their right to object to the
11   proposed Settlement. All objections to the Settlement must be filed with the Court no later than
12   forty-five (45) days after the date of mailing of the Notice and must be served upon Class Counsel
13   and Defendant's Counsel. Any Class Member who submits a valid and timely Opt-Out Request is
14   barred from objecting to the Settlement.  Class Members who timely file objections to the
15   Settlement may appear at the Final Approval Hearing either in person or through the objector's
16   own counsel, provided the objector has notified the Court, Class Counsel and Defendant's Counsel
17   of his/her intention to appear at the Final Approval Hearing at the time he/she submits his/her
18   written objections. The Parties may file with the Court written responses to any filed objections
19   no later than five (5) court days prior to the Final Approval Hearing.
20

21                  **XIV. FINAL APPROVAL HEARING AND ORDER**

22      **14.1**   At least sixteen (16) days prior to the Final Approval Hearing (or in accordance
23   with the Court's then-applicable Civil Local Rules or as agreed upon by the Parties and approved
24   by the Court), Plaintiff shall file and serve his Motion for Final Approval of Class Action
25   Settlement, requesting an order from the Court granting final approval of the Settlement as just,
26   fair, equitable, reasonable, adequate and in the best interests of the Class Members, and directing
27   the Parties to carry out the provisions of this Agreement. The Motion shall be heard on or about
28   one hundred and ten (110) days after the execution of this Agreement.

                                        20

STIPULATION OF SETTLEMENT

**14.2**    At or in connection with the Final Approval Hearing, the Parties shall request that the Court enter an Order of Final Approval of Settlement, which shall state that all Class Members who have not submitted a valid and timely Opt-Out Request are bound by the Release of Claims set forth in this Agreement.

### XV. DISTRIBUTION OF SETTLEMENT PAYMENTS TO THE CLASS

**15.1**    Within seven (7) business days after the Effective Date, the Claims Administrator will direct Defendant to pay to the Claims Administrator the amount necessary to fund the QSF, Within seven (7) business days of receiving that notice, Defendant will wire the funds requested by the Claims Administrator into a QSF, or as designated by the Claims Administrator.

**15.2**    Prior to mailing the monetary payments to each Eligible Class Member, the Claims Administrator shall calculate and deduct required withholdings and payroll taxes from each Eligible Class Member's Claim Amount attributable to wages.  The settlement checks to Eligible Class Members shall be prepared and mailed by the Claims Administrator to Eligible Class Members within five (5) business days after receiving the wire transfer of money to fund the QSF from Defendant.  The settlement checks payable to Class Counsel for the attorneys' fees and litigation costs awarded by the Court shall be prepared and mailed by the Claims Administrator to Class Counsel within five (5) business days after receiving the wire transfer of money to fund the QSF from Defendant.

**15.3**    The Claims Administrator shall provide, as appropriate, an IRS Form W-2 and Form 1099 to each Eligible Class Member.

**15.4**    The expiration date of the settlement checks will be ninety (90) days from the date the settlement checks are mailed.  The amount of any settlement checks that are not cashed by Eligible Class Members within ninety (90) days of the date of mailing of the settlement checks shall be donated to Sacramento Court Appointed Special Advocates.

**15.5**    Within fifteen (15) days after the ninety-day expiration period set forth above in section 15.4, the Claims Administrator shall provide to Class Counsel and Defendant's Counsel a verification/declaration signed under penalty of perjury that it has mailed the settlement checks to

21

1  each Eligible Class Member, the amount of any uncashed funds, if any, and final disposition of all

2  funds under this Agreement or as otherwise approved by the Court.

## XVI. RELEASE OF CLAIMS BY CLASS MEMBERS

Upon the Effective Date of this Agreement:

**16.1**     All Class Members (and their assigns, heirs, successors and personal representatives) who have not submitted a timely and valid Opt-Out Request, regardless of whether they submitted a Claim Form, effectively release the Released Parties from the Released Claims. With respect to the Released Claims only, Class Members (and their assigns, heirs, successors and personal representatives) shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, any Released Claim against Defendant during the Class Period. Although the Class Members may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the respective Released Claims, upon the occurrence of the Effective Date Class, Class Members shall be deemed to have fully, finally, and forever settled and released any and all of the Released Claims during the Class Period, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. Each and every Class Member who has not submitted a timely and valid Opt-Out Request shall be permanently enjoined and forever barred from prosecuting any and all Released Claims against the Released Parties.

**16.2**     With respect to the Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Class Members shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code to the extent that it is

22

STIPULATION OF SETTLEMENT

1   applicable to the Released Claims (or any other similar provision under federal, state or local law

2   to the extent any such provision is applicable), which is quoted below.  Section 1542 provides:

3
4
5
6

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO
> EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING
> THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST
> HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT
> WITH THE DEBTOR.

7   Thus, subject to and in accordance with the provisions of this Agreement, even if the

8   Plaintiff and/or the Class Members may hereafter discovery facts in addition to or different from

9   those which they now know or believe to be true with respect to the subject matter of Plaintiff's

10  Released Claims, Plaintiff and Class Members, upon the Effective Date, shall be deemed to have

11  and by operation of the Final Judgment shall have fully, finally, and forever settled and released

12  any and all of Plaintiff's Released Claims.  This is true whether Plaintiff's Released Claims are

13  known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not

14  concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity

15  now existing or coming into existence in the future, including, but not limited to, conduct which is

16  negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard

17  to the subsequent discovery or existence of such different or additional facts.

18
## XVII. CIRCULAR 230 DISCLAIMER

19  **17.1**      Each of the Parties acknowledges and agrees that (1) no provision of this

20  Agreement, and no written communication or disclosure between or among the Parties or their

21  Counsel and other advisers is or was intended to be, nor shall any such communication or

22  disclosure constitute or be construed or be relied upon as, tax advice within the meaning of United

23  States Treasury Circular 230 (31 CFR part 10, as amended); (2) each Party (a) has relied

24  exclusively upon his, her or its own, independent legal and tax advisors for advice (including tax

25  advice) in connection with this Agreement, (b) has not entered into this Agreement based upon the

26  recommendation of any other Party or any Counsel or advisor to any other Party, and (c) is not

27  entitled to rely upon any communication or disclosure by any other Counsel or advisor to any

28

23

STIPULATION OF SETTLEMENT

1   other Party to avoid any tax penalty that may be imposed on that Party; and (3) no attorney or

2   advisor to any other Party has imposed any limitation that protects the confidentiality of any such

3   attorney's or advisor's tax strategies (regardless of whether such limitation is legally binding)

4   upon disclosure by the Party of the tax treatment or tax structure of any transaction, including any

5   transaction contemplated by this Agreement.

6   ### XVIII. CONFIDENTIALITY OF SETTLEMENT

7   **18.1**    The Parties shall keep the terms and conditions of this Settlement confidential until

8   this Agreement is lodged with the Court. The Parties acknowledge and agree that neither they nor

9   Class Counsel or Defense Counsel will issue any press release or initiate any contact with the

10  press, disclose to the press the fact or terms of the Settlement, or respond to any press inquiry

11  concerning the Settlement except to acknowledge that the Action has been settled.  The website

12  maintained by Class Counsel shall not contain any information regarding the value or amount of

13  the Settlement or any other term of the Settlement; nor shall it link or refer to any other website

14  that does disclose such information.

15  **18.2**    Any communication about the Settlement with Class Members prior to the Court-

16  approved Notice Packet being sent by the Claims Administrator will be limited to a general

17  statement that a settlement has been reached and the details will be communicated in a

18  forthcoming Court-approved Notice.

19

20  ### XIX. NO EFFECT ON EMPLOYEE BENEFITS

21  **19.1**    The Claim Amounts paid to Eligible Class Members shall be deemed not to be

22  pensionable earnings and shall not have any effect on the eligibility for, or calculation of, any

23  employee benefits (e.g., vacations, holiday pay, retirement plans, etc.) of the Class Members. The

24  Parties agree that any monetary settlement payments to Eligible Class Members under the terms of

25  this Agreement do not represent any modification of Class Members' previously credited hours of

26  service or other eligibility criteria under any employee pension benefit plan or employee welfare

27  benefit plan sponsored by Defendant.  Any amounts paid to former employees of Defendant

28  pursuant to this Agreement shall not be considered "compensation" in any year for purposes of

24

determining eligibility for, or benefit accrual within, an employee pension benefit plan or employee welfare benefit plan sponsored by Defendant.

## XX. NOTICE TO COUNSEL

**20.1**      All notices, requests, demands and other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be delivered personally or mailed, postage prepaid, by first-class United States mail, to the undersigned persons at their respective addresses as set forth herein:

| **Counsel for Plaintiff:** | **Counsel for Defendant:** |
| --- | --- |
| Anthony M. Perez, Jr.<br>Perez Law Office<br>455 Capitol Mall, Suite 225<br>Sacramento, CA 95814<br>(916) 441-0500 | Gregory G. Iskander<br>Littler Mendelson, P.C.<br>Treat Towers<br>1255 Treat Blvd., Suite 600<br>Walnut Creek, CA 94597<br>(925) 932-2468 |

## XXI. MISCELLANEOUS PROVISIONS

**21.1**      This Agreement may not be modified or amended, except in a writing signed by the Parties and their respective Counsel, and as approved by the Court, if necessary.

**21.2**      This Agreement, including the Exhibits referenced herein (which form an integral part hereof), constitutes the entire agreement between the Parties with respect to the subject matter contained herein. Except as expressly provided herein, this Agreement has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or written representations or terms shall modify, vary or contradict the Agreement's terms. In entering into this Agreement, the Parties agree that this Agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement and/or any specific term or condition contained herein.

25

STIPULATION OF SETTLEMENT

**21.3**     Plaintiff and Defendant participated in the negotiation and drafting of this Agreement and each had available the advice and assistance of their respective independent counsel. As such, neither Plaintiff nor Defendant may claim that any ambiguity in this Agreement should be construed against the other.

**21.4**     This Agreement shall be subject to, governed by, construed, enforced and administered in accordance with the laws of the State of California, both in its procedural and substantive aspects, and without regard for the principle of conflict of laws, or shall be interpreted and enforced, as applicable, in accordance with the laws of the United States.

**21.5**     Any failure of any Party, Defense Counsel, and/or Class Counsel to comply with any obligation, covenant, agreement, or condition of this Agreement may be expressly waived in writing, to the extent permitted under applicable law, by the Party or Parties and their respective Counsel entitled to the benefit of such obligation, covenant, agreement, or condition. A waiver or failure to insist upon strict compliance with any representation, warranty, covenant, agreement, or condition shall not operate as a waiver of, or estoppel with respect to, any subsequent or other failure.

**21.6**     None of the rights, commitments, or obligations recognized under this Agreement may be assigned by any Party, Eligible Class Member, Class Counsel, or Defense Counsel without the express written consent of each other Party and their respective Counsel hereto. The representations, warranties, covenants, and agreements contained in this Agreement are for the sole benefit of the Parties under this Agreement, and shall not be construed to confer any right or to avail any remedy to any other person.

**21.7**     This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, and exchanged by facsimile, pdf, email or photocopy, each of which shall be deemed an original of this Agreement.

**21.8**     This Agreement is binding upon the Parties to this Agreement, and shall inure to the benefit of their respective predecessors, successors, shareholders, officers, directors,

26

STIPULATION OF SETTLEMENT

1  employees, agents, trustees, representatives, administrators, fiduciaries, assigns, subrogees,

2  executors, partners, parents, subsidiaries, and privies, and upon Class Members who do not opt-

3  out of this Action.

4  **21.9**  The Parties acknowledge that they have been represented by Counsel throughout all

5  negotiations that preceded the execution of this Agreement and that this Agreement has been

6  executed with the consent and advice of their respective Counsel.

7  **21.10**  Counsel for Plaintiff, identified below, warrant and represent that they are

8  expressly authorized by Plaintiff to take all appropriate action required or permitted to be taken

9  pursuant to this Agreement in order to effectuate its terms. Counsel for Defendant warrants and

10 represents that it is authorized to take all appropriate action required or permitted to be taken by

11 Defendant pursuant to this Agreement in order to effectuate its terms.

12  **21.11**  Subject to Court approval, the Parties will adhere to the following schedule:

| Event | Timing |
|---|---|
| Defendant provides list of Class Members to the Claims Administrator. | 15 days after approval of the Notice Packet by the Court |
| Claims Administrator mails Notice Packet to Class Members. | 21 days after approval of the Notice Packet by the Court |
| Objection filing deadline | 45 days after mailing of Notice by Claims Administrator |
| Claims Period/Requests for Exclusion Deadline. | 45 days after mailing of Notice by Claims Administrator |
| Final Approval Hearing. | Approximately 110 days after approval of the Notice Packet by the Court |
| Claims Administrator mails checks to Eligible Class Members, Plaintiff and Class Counsel. | 15 days after the Effective Date |
| Claims Administrator submits declaration of mailing checks to Eligible Class Members. | 30 days after Effective Date |

27

STIPULATION OF SETTLEMENT

1

## XXII. CONTINUING JURISDICTION

2    **22.1**    The Parties agree that upon the occurrence of the Effective Date, this Agreement

3   shall be enforceable by the Court and the Court shall retain jurisdiction over the Parties and the

4   Class Members to enforce the terms, conditions and obligations of the Agreement.

5        IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date

6   indicated below:

7

8   Dated: ~~July~~ June 30 , 2015

    PEREZ LAW OFFICES

9

10

11    Anthony M. Perez, Jr.
      Attorneys for Plaintiffs

12

13

14   Dated: ~~July~~ June 3, 2015

    LITTLER MENDELSON, P.C.

15

16

17    Gregory G. Iskander
      Attorneys for Defendant,
      SIEMENS INDUSTRY, INC.

18

19

20

21

22

23

24

25

26

27

28

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 2

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AWARD OF ATTORNEY'S FEES & COSTS & CLASS REPRESENTATIVE INCENTIVE PAYMENT

22

1  **PEREZ LAW OFFICES**
   Anthony M. Perez, Jr. (SBN 113041)
2  455 Capitol Mall, Suite 225
3  Sacramento CA 95814
   Telephone: (916) 441-0500
4  Facsimile: (916) 441-0555
   email: aperez@perezlawoffices.com
5
   Attorney for Plaintiff
6  JARRID WHITLEY, on behalf of himself
7  and others similarly situated

8

9

10              **UNITED STATES DISTRICT COURT**
                **EASTERN DISTRICT OF CALIFORNIA**
11                  **SACRAMENTO DIVISION**

12
   **JARRID WHITLEY**,                          | Case No.: 2:14-cv-0099 MCE-DAD
13  on behalf of all others similarly situated,
                                                 **STIPULATION AND ORDER**
14                              Plaintiff,        **APPROVING CLASS NOTICE AND**
                                                 **CLAIM FORM**
15  v.

16  **SIEMENS INDUSTRY, INC., also doing**
17  **business as and referred to as SIEMENS**
    **USA, SIEMENS CORPORATION, and**
18  **SIEMENS, and DOES 1-100, inclusive,**

19
              Defendants.
20

21

22

23

24

25

26

27

28

---
STIPULATION AND ORDER APPROVING CLASS NOTICE AND CLAIM FORM

1  **STIPULATION**

2       On June 1, 2015, this Court Ordered the Enforcement of the Settlement Agreement in the

3  above-captioned matter. The Stipulation of Class Action Settlement has been lodged with the Court.

4  Class Counsel and Defendant's Counsel have agreed to the form of the Class Notice and Claim Form,

5  attached hereto as Exhibits A and B, and scheduling in connection with this matter with a Final

6  Approval Hearing to be conducted on October 1, 2015 at 2:00 p.m. in Courtroom No. 7.

7

8  **ORDER**

9       The Class Notice and Claim Form are hereby approved by the Court for distribution to

10 Putative Class Members. Scheduling shall be as follows:

11

| Event | Timing |
|---|---|
| Defendant provides list of Class Members to the Claims Administrator. | 15 days after the Court approves the Notice |
| Claims Administrator mails Notice Packet to Class Members. | 21 days after the Court approves the Notice |
| Objection filing deadline | 45 days after mailing of Notice by Claims Administrator |
| Claims Period/Requests for Exclusion Deadline. | 45 days after mailing of Notice by Claims Administrator |
| Final Approval Hearing. | October 1, 2015, 2:00 p.m. |
| Claims Administrator mails checks to Eligible Class Members, Plaintiff and Class Counsel. | 15 days after receiving Final Approval |
| Claims Administrator submits declaration of mailing checks to Eligible Class Members. | 30 days after receiving Final Approval |

23 **IT IS SO ORDERED.**

24 Dated: July 8, 2015

25

26

27 MORRISON C. ENGLAND, JR., CHIEF JUDGE
   UNITED STATES DISTRICT COURT

28

---

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
# EXHIBIT 3
25
26

1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9          EASTERN DISTRICT OF CALIFORNIA

10

11   JARRID J. WHITLEY, on behalf of          No.  2:14-cv-00099-MCE-DAD
     himself, and others similarly situated,
12
                    Plaintiff,
13                                             **MEMORANDUM AND ORDER**
           v.
14
     SIEMENS INDUSTRY, INC., also
15   doing business as and referred to as
     SIEMENS USA, SIEMENS
16   CORPORATION, and SIEMENS, and
     DOES 1-100, inclusive,
17
                    Defendants.
18

19

20          This is a putative class action in which Plaintiff Jarrid Whitley ("Plaintiff") makes

21   wage and hour claims against his former employer, Defendant Siemens Industry, Inc.

22   ("Siemens"). Siemens now moves to enforce the terms of a settlement agreement it

23   reached with Plaintiff following a lengthy mediation and subsequent negotiations. That

24   settlement resulted in a written Memorandum of Understand ("MOU") prepared by

25   Plaintiff's counsel and signed by all parties. Plaintiff later attempted to withdraw his

26   consent to settling the case, and Plaintiff alleges the MOU was not intended by the

27   parties to constitute a binding settlement. As set forth below, Siemens' Motion to

28   Enforce Settlement Agreement is GRANTED.

                                              1

# BACKGROUND

On January 15, 2014, Plaintiff filed the instant putative class action, which included the following claims asserted against Siemens: 1) failure to provide meal and rest periods in accordance with California Labor Code §§ 226.5 and 512; 2) failure to furnish accurate wage statement in violation of California Labor Code § 226; 3) conversion; and 4) unfair business practices in contravention of California Business and Professions Code § 17200, et seq.

In the interests of timely resolution and conservation of resources on the part of all involved, the Parties decided to engage in early mediation with a voluntary exchange of documents and information. Decl. of Gregory Iskander, ¶ 2. Michael Dickstein, an experienced mediator with extensive experience in employment cases, and in particular wage and hour class actions, was selected to mediate. Id.

On May 6, 2014, the parties attended a voluntary mediation with Mr. Dickstein in San Francisco. Both Plaintiff and his counsel, Anthony Perez, Jr., were present at the resulting mediation, which lasted about twelve hours. Id. at ¶ 5. Although no final resolution was reached at that session, the parties made substantial progress and agreed to continue to discuss settlement through Mr. Dickstein . Id. Following these negotiations, a settlement covering all claims made in the action was reached. Mr. Perez proceeded to memorialize the terms of the settlement in a MOU. On June 30, 2014, both Plaintiff and Mr. Perez signed the MOU, which provides in pertinent part as follows:

> As a result of mediation of claims with Michael Dickstein, Mediator, Jarrid Whitley and Siemens Industry, Inc. ("Siemens") **reached agreement to settle [this] lawsuit** . . . subject to the court's approval, with the following general terms, which will be specified with more particularity in a fully documented Settlement Agreement. **This Memorandum of Understanding is intended by the Parties to be a binding agreement.**

MOU, Ex. A to Iskander Decl., ¶ 1 (emphasis added).

1   Substantively, the MOU proceeds to define the class for purposes of settlement and

2   details the settlement fund the class is to receive as well as the disbursement method

3   applicable to those proceeds. Id. at ¶¶ 2-5. Additionally, the MOU also sets forth the

4   maximum amount of attorney's fees Plaintiff's counsel may collect and what will happen

5   if more than ten percent of the class opt out of the settlement. Id. at ¶¶ 3, 6. With regard

6   to Plaintiff Whitley individually, the MOU provides the incentive payment he will receive

7   as the cash representative, as well as an additional settlement payment of $25,000.00

8   for his personal claims. Id. at ¶¶ 5. In exchange, Whitley agreed to provide a general

9   release of all claims with a waiver under California Civil Code § 1542, and further agreed

10  not to reapply for employment with Siemens and to keep the terms of his settlement

11  confidential. Id. at ¶¶ 7, 10.

12      Following execution of the MOU, counsel for Siemens agreed to draft a Formal

13  Stipulation of Class Action Settlement to file with this Court, as contemplated by the

14  MOU. Iskander Decl., at ¶ 7. Plaintiff's counsel agreed that the Stipulation was

15  acceptable and accurately reflected the terms of the MOU (Id. at ¶ 7). Consistent with

16  that representation, Plaintiff's counsel filed a Notice of Settlement with this Court on

17  July 3, 2014. ECF No. 15.

18      Plaintiff subsequently refused to sign either the Stipulation of Class Action

19  Settlement or the corresponding Settlement Agreement as to his personal claims. This

20  motion to enforce settlement followed.

21

22                          **STANDARD**

23

24      "A settlement agreement is a contract, and the legal principles which apply to

25  contracts generally apply to settlement contracts." Weddington Productions, Inc. v. Flick,

26  60 Cal. App. 4th 793, 810 (1998). "The construction and enforcement of settlements

27  agreements are generated by principles of local law which apply to interpretation of

28  contracts generally." United Commercial Ins. Service v. Paymaster Corp., 962 F.2d 853,

3

1   856 (9th Cir. 1992), quoting Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1989).

2   Consequently, in determining whether to enforce the settlement allegedly reached by the

3   parties herein, the Court must apply California law.

4       California has a strong policy in favor of enforcing settlement agreements. Osumi

5   v. Sutton, 151 Cal. App. 4th 1355, 1357 (2007). To that end, the inherent authority of

6   district courts to enforce valid settlement agreements in pending actions has long been

7   recognized. See MetroNet Servs. Corp. v. U.S. West Comms., 329 F.3d 986, 1013-14

8   (9th Cir. 2003) (cert. granted and judgment vacated on other grounds by Quest Corp. v.

9   MetroNet Servs. Corp. 540 U.S. 1147 (2004); see also In re City Equities Anaheim, Ltd.,

10   22 F.3d 954, 957 (9th Cir. 1994); TNT Marketing Inc., v. Agresti, 796 F. 2d 276, 278

11   (9th Cir. 1986). The Court's discretion in enforcing settlement agreements remains

12   broad even where a party claims he or she did not understand of terms of the

13   agreement. See Hedging Concepts, Inc. v. First Alliance Mortgage Co., 41 Cal. App. 4th

14   1410, 1421 (1996) ("In the interest of preserving some reasonable stability in commercial

15   transactions, the courts will not set aside contractual obligations, particularly when they

16   are embodied in written contracts, merely because one of the parties claims to have

17   been ignorant of, or to have misunderstood, the provisions of the contract").

18

19   **ANALYSIS**

20

21       A settlement agreement must meet two general requirements in order to be

22   enforceable. First, it must be a complete agreement. Maynard v. City of San Jose,

23   37 F.3d 1396, 1401 (9th Cir. 1994). Second, the parties must have either agreed to the

24   terms of the agreement or authorized their respective counsel to effectuate settlement.

25   Harrop v. Western Airlines, Inc., 550 F.2d 1143, 1144-45 (9th Cir. 1977). As long as a

26   "meeting of the minds" has been reached as to the essential terms of the settlement, it is

27   enforceable, even should a party later refuse to sign. See Dillard v. Starcon Int'l,

28   ///

4

1    Inc., 483 F.2d 502 (7th Cir. 2007) (enforcing oral settlement reached in principal where
2    parties disagreed over terms to be included in final settlement agreement).

3         Turning first to the requirement that the settlement must constitute a complete
4    agreement, general contract principles provide that a proposal for compromise can be
5    accepted, and accordingly form a complete agreement, if its terms are reasonably
6    certain. See Weddington Productions, Inc., 60 Cal. App. 4th at 811. In order to be
7    binding, a settlement need only be sufficiently definite to enable a court to give it
8    meaning. Id. Consequently, the fact that a more formal agreement may be
9    contemplated does not alter the validity of an agreement whose terms meet the requisite
10   definiteness. Blix Street Records, Inc. v. Cassidy, 191 Cal. App. 4th 39, 48-49 (2010)
11   To that end, California law permits parties to bind themselves to a contract even if they
12   anticipate that certain aspects of the deal be reduced to a further writing thereafter.
13   Facebook, Inc. v. Pac, Nw. Software, Inc., 640 F.3d 1034, 1038 (9th Cir. 2011).

14        The facts encountered by the Ninth Circuit in Facebook are particularly instructive
15   here. There, after a day of negotiations, the parties signed a handwritten "Settlement
16   Agreement" which specified that the deal reached was both binding and subject to
17   enforcement. When the settlement fell apart during negotiations over the form of the
18   final agreement, Facebook filed a motion to enforce. One of the parties argued that the
19   Settlement Agreement was unenforceable, both because it lacked material terms and
20   had been procured through fraud. The district court enforced the settlement and that
21   decision was upheld on appeal. As the Ninth Circuit noted, as long as the terms a
22   settlement agreement are sufficiently definite for a court to determine the parameters of
23   the agreement, to determine whether a breach has occurred and to order remedies as a
24   result of that breach, the agreement is binding, even if the parties "understood that some
25   material aspects of the deal would be papered later." Id. at 1038.

26        In the instant matter, as in Facebook, the parties reached an agreement that was
27   sufficiently definite to enable a court to give it meaning and contained the essential terms
28   of their settlement, which they intended to be binding, even if some "form and

5

1  documentation" were to be determined later. Id. Indeed, the partial opposition filed by

2  Plaintiff's counsel, Anthony M. Perez, does not contest that a valid settlement was

3  reached as to the class allegations. Perez only takes issue with whether Plaintiff is

4  bound to release his individual claims in addition to those he pursued on behalf of the

5  class. Although Perez himself prepared the MOU, and while the MOU provides that

6  Plaintiff will release his individuals claims in exchange for a settlement payment of

7  $25,000.00[1], Perez takes the position that Plaintiff could not have waived his claims

8  under California Civil Code § 1542 because the Settlement Agreement stated only that

9  Plaintiff was to provide a general release and to waive his rights under § 1542. Perez

10  argues that because the Settlement Agreement did not specifically spell out what a

11  § 1542 waiver entailed, that portion of the Agreement was not subject to enforcement

12  and should be severed from the valid remainder of the Settlement Agreement.

13  The Court finds this contention unpersuasive. First, the Settlement Agreement

14  provides in two separate places, in paragraphs 7 and 10, that Plaintiff will provide a

15  "general release of all claims" and a "Civil Code § 1542 waiver." Importantly, it was

16  Plaintiff's counsel himself who drafted the MOU, and Plaintiff was represented at all

17  times during the lengthy settlement negotiations that preceded the agreement. This in

18  and of itself is persuasive evidence that Whitley understood his rights as well as the

19  impact of releasing his claims. See Israel-Curley v. Cal. Fair Plan, 126 Cal. App. 4th

20  123, 129 (2005) ("If plaintiff had any question about the scope of the [ § 1542] release

21  [he] was signing, despite its clear language, [he] had counsel to advise [him] on the

22  matter"). In addition, as stated above, the release being made by Plaintiff is

23  unequivocally described as a "general release of all claims." This also put Plaintiff on

24  notice of the fact that he was relinquishing all his rights against Defendant. Significantly,

25  too, under California law, a § 1542 release need not even specifically recite its terms to

26  be binding, as long as the evidence indicates that the parties consciously intended to

27  release all claims. See Casey v. Proctor, 59 Cal.2d 97, 110 (1963). Here, aside from

28  _____
[1] See MOU, Ex. A to Iskander Decl., ¶ 10.

6

1    the terms of the Settlement Agreement itself, the fact that Plaintiff was represented at all

2    times by counsel, squarely militate in favor of such a conclusion.

3        The cases Plaintiff's counsel cites in suggesting a contrary conclusion are

4    unavailing.  In Kaiser v. Trace, Inc., 2014 WL 1745419 (D. Idaho 2014), for example,

5    unlike the present matter, the parties had yet to agree on the exact nature of the release

6    and had only memorialized their agreement in an email.  Similarly, in Inamed Corp. v.

7    Kuzmak, 275 F. Supp. 2d 1100 1127-30 (2002), where the terms of the settlement were

8    discussed only in letters between counsel, with no settlement agreement of any kind

9    formalized, reference to a general release in counsel's letters could not be enforced.

10   Here, on the other hand, a general release was specified in a document specifically

11   denominated as a settlement agreement, containing all essential terms of the parties'

12   agreement, and signed by both Plaintiff and his counsel.

13       Finally, the Court notes that a second attorney for Plaintiff, David Yeremian, filed

14   an additional opposition to the instant motion on February 9, 2015, nearly three months

15   after this Motion was submitted on November 10, 2014, in advance of the November 13,

16   2014 hearing date.  Defendant has objected to that Opposition as untimely, and the

17   Court agrees.  The record shows that Yeremian filed a second lawsuit on Plaintiff's

18   behalf in state court on October 20, 2014 (Whitley v. Siemens, Case No. 2:15-cv-00303-

19   MCE-DAD, ECF No. 1).  This was before any opposition to the instant motion would

20   have been due, under Eastern District Local Rule 230(c), fourteen (14) days prior to the

21   November 13, 2014 motion hearing date.  Under those circumstances, notice must be

22   imputed to Yeremian of his client's prior lawsuit, and the long overdue arguments voiced

23   by Yeremian in his tardy opposition will not be considered.

24   ///

25   ///

26   ///

27   ///

28   ///

7

**CONCLUSION**

Given the foregoing, Defendant's Motion to Enforce Settlement (ECF No. 16) is GRANTED, in its entirety.[2] Given the fact that Plaintiff entered into a binding settlement as to both his class-based and individual claims, the Court declines Plaintiff's suggestion that his individual claims be severed and permitted to proceed. Finally, Plaintiff's second Opposition (ECF No. 23) is STRICKEN as untimely.

IT IS SO ORDERED

Dated: June 1, 2015

MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[2] Because oral argument was not deemed to be of material assistance, this motion was submitted on the briefing. E.D. Local Rule 230(g).

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24 **EXHIBIT 4**
25
26

27
28

## MEMORANDUM OF UNDERSTANDING OF SETTLEMENT
## REACHED BETWEEN
## JARRID WHITLEY and SIEMENS INDUSTRY, INC.

1. As a result of mediation of claims with Michael Dickstein, Mediator, Jarrid Whitley and Siemens Industry, Inc. ("Siemens") reached agreement to settle the lawsuit, entitled " Jarrid Whitley on behalf or himself and others similarly situated, v. Siemens Industry, Inc., and Does 1 through 100, inclusive, Defendants" pending in the United States District Court for the Eastern District of California, Case No. 2:14-CV-00099-MCE-DAD, subject to the court's approval, with the following general terms, which will be specified with more particularity in a fully documented Settlement Agreement. This Memorandum of Understanding is intended by the Parties to be a binding agreement.

2. For purposes of settlement only the parties will stipulate to the certification of a class represented by Plaintiffs counsel and by Plaintiff as class representative described as "all hourly non-exempt employees of Siemens in California with any responsibilities related to production at the Siemens Rail Systems plant located at 7464 French Road, Sacramento, California." The number of persons in the class is estimated at 350 employees at this time. The beginning date for inclusion in the class is four years before the Complaint was filed on January 15, 2010. The end date for inclusion in the class will be the date of preliminary approval of the settlement. This period is the "class period."

3. The amount of the settlement fund will be no more than $990,000.00 non reversion. This amount will include: the incentive payment to Plaintiff Whitley in the amount of $7,500.00, all attorneys' fees and costs awarded by the court to Plaintiffs Counsel, not to exceed 28% or $277,200.00 plus reasonable costs (the award of which sum Siemens will not oppose), all employer-side taxes, such as FICA, Medicare, and federal and state unemployment and other payroll taxes, the costs of settlement administration, and all amounts distributed to class members who make a valid claim.

4. The parties will seek bids from class action administrators and select a reputable administrator with a favorable bid, by mutual agreement.

5. The amount paid to each class member will be determined by the following: From the full amount of the settlement, all payments will be subtracted for attorneys' fees and costs, incentive payment to Plaintiff $7,500.00, settlement administration costs, and employer-side taxes. The remaining net settlement fund shall be divided by the total number of qualifying shifts times and related salary worked by all of the class members during the class period. The total shifts/salary will be calculated for each class member who will then be eligible to receive a proportional share provided they file a claim form timely.

6. If more than 10% of class members opt out of the settlement, Siemens will have the ability to cancel the settlement, subject to paying class administrator expenses to date. Siemens will confer with Plaintiffs counsel before any cancellation. The parties agree to cooperate to promote participation in the settlement, and the preliminary and final approval of the settlement.

7. Class members will release Siemens, its parents, subsidiaries and affiliates, and its/their past and present insurers, officers, directors, employees, agents, and attorneys from any and all California Labor Code claims against the released parties, that were made or could have been made in the lawsuit, based on meal and rest break violations. The Release to include related PAGA claims. Plaintiff Whitley will provide a general release of all claims with a Civil Code §1542 waiver, in a side agreement in exchange for a settlement payment outlined below. The Parties agree that Labor Code § 2804 does not render this Memorandum of Understanding or the anticipated fully documented Settlement Agreement null or void.

8. Any uncashed settlement checks, cy pres, will go to Sacramento CASA - Sacramento Court Appointed Special Advocates. (www.sacramentocasa.org).

9. There will be no publicity of the settlement, and Plaintiffs counsel will not post any information about the case or the settlement on websites or on the web.

10. In exchange for the settlement payment of $25,000.00, Whitley will sign a general release of Civil Code §1542 waiver. Plaintiff Whitley has alleged with the California Labor Board, claims of retaliation and wages owed that the Defendant would like to resolve without admitting any liability or conducting further litigation. Whitley agrees to never reapply for employment with Siemens, or any subsidiary or affiliate. Siemens shall have no duty to consider Whitley for hire or to hire Whitley, by virtue of this agreement. Starting with his signature on this Memorandum of Understanding, and thereafter, Whitley will keep the terms of this settlement confidential and not discuss this settlement with other persons, and will not disparage Siemens or its affiliates, officers, employees, or products. Whitley's promise of confidentiality is a material provision of this agreement.

11. Upon final approval, the lawsuit will be dismissed with prejudice. Defendant will verify under penalty of perjury the shift data prdued is true and correct. After the final approval is effective (all appeals either finally decided or all appeal periods have expired and no appeals filed), the administrator will distribute the settlement fund. The court will retain jurisdiction to accomplish the settlement. Settlement payments to Class Representative and Class Members to be allocated between taxable wages and non taxable penalties and interest to be determined.

12. Siemens makes no admission of wrongdoing.

Dated: June 30, 2014

JARRID WHITLEY

Dated: June 30, 2014

PEREZ LAW OFFICES

Anthony M. Perez, Jr.

Attorneys For Defendant:

LITTLER, MENDELSON

Dated: July 2, 2014

Gregory G. Iskander

Dated: July 2, 2014

SIEMENS INDUSTRY, INC.

By

Debbie M. Cohen, Senior Counsel
Lead Employment Attorney